## OHIO TANK CAR CO. v. KEITH RY. EQUIPMENT CO.

### No. 8615.

Circuit Court of Appeals, Seventh Circuit.

Feb. 27, 1945.

Rehearing Denied April 5, 1945.

H. Russell Bishop, of Washington, D. C., Lee J. Quasey, of Chicago, Ill., and H. D. Driscoll, of Washington, D. C., for appellant.

Thomas I. Underwood, Bryce L. Hamilton, and Fred J. McManus, all of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an action by one tank car company against another to recover a sum of money which is alleged to have been earned in the form of mileage allowances on certain tank cars, owned by the defendant and leased to the plaintiff. The defendant answered and filed a counterclaim for the amount of like mileage allowance which it had paid plaintiff, alleging that such payments constituted a violation of the Elkins Act, 49 U.S.C.A. §§ 41–43. Upon a hearing, without a jury, the court rendered judgment dismissing the complaint and ordered payment of the counterclaim, and from that judgment this appeal is prosecuted.

Plaintiff, a Delaware corporation, is a tank car line with its own recording marks, owning, leasing and operating tank cars and receiving mileage allowances from the railroads for the use of the same. The defendant, an Illinois corporation, is also a tank car line. About June 1, 1941, these parties executed a lease agreement by which the defendant leased 100 of its tank cars to plaintiff for one year at a rental stated in the lease. The lease provided for allocation between the lessor and the lessee of the mileage allowance earned by the cars, that is to say, amounts paid by the carriers at a rate of 1½ cents per mile, loaded and empty, for the use of tank cars. The lease further provided that the mileage earnings should be collected by the defendant and credited to the plaintiff to the extent of the rental, and if there were no rentals unpaid, the excess mileage earnings should be divided according to a formula set forth in the lease.

The parties performed under the lease until January 15, 1942, at which time the defendant notified plaintiff that because of the very close connection between the Akin Gasoline Company and plaintiff, the mileage allowance provisions of the contract were violative of the Elkins Act, and that the portion of the contract dealing with the mileage allowances was cancelled, effective January 1, 1942. The complaint in this action was filed November 10, 1943.

Plaintiff and the Akin Gasoline Company, hereinafter referred to as Akin, are owned in the same proportion by the same group of stockholders, and, with minor exceptions, have the same directors and of-

ficers and share the same suite of offices in Tulsa, Oklahoma. During the term of the lease plaintiff loaned sums of money to Akin on open account which were subsequently repaid without interest. Other than this there were no transfers of funds from one company to the other and there were no transfers of funds representing mileage allowances from plaintiff to Akin.

Akin, an Ohio corporation, is a marketer of petroleum and its products which it buys from refineries and resells to customers. Its business was carried on as follows: Upon receiving an order from a customer, Akin placed an order with a refinery to ship the material to the customer and gave a copy of the order to one Evans who was secretary of plaintiff and traffic manager of Akin. Evans inserted the routing, the freight rate and a freight differential (the latter usually amounting to about four cents). The refinery, pursuant to Akin's instructions, shipped the material on bills of lading supplied by Akin, preparing an original and three memorandum copies of such bills of lading. The original and two copies were sent to Akin together with an invoice. Akin in turn sent the invoice and the original and one copy of the bill of lading to its customer. The price at which Akin sold to its customers was the market price less the freight differential, and Akin paid the refinery the market price, less the differential, and also less one-eighth cent per gallon.

The refinery paid the freight differential and Akin's customer paid the remainder of the freight charges. Neither Akin nor plaintiff paid any part of the freight charges.

Mileage allowance is paid by the railroads for the use of tank cars under two arrangements. On cars the railroads use which are furnished by shippers, the payment for their use is governed by tariffs on file with the Interstate Commerce Commission. Where the cars are furnished by other railroads or, as here, by a tank car line, payment for their use is governed by rules set forth in the Railway Equipment Register.

The questions presented are: (1) Whether for the purpose of applying the provisions of the Elkins Act, two corporations may be considered as the same corporation, and their respective stockholders considered the same, when one corporation markets petroleum products and the other operates a fleet of tank cars, both corporations being owned in the same proportions and by the same stockholders and having, with minor differences, the same officers and directors; (2) whether, under the Elkins Act, a marketer of petroleum products, which, in consummating its sales, gives shipping instructions and signs bills of lading as consignor, is prohibited from receiving rebates, concessions or discriminations in freight rates, even though freight charges are paid by customer as consignee. The defendant concedes that both its answer and counterclaim are without merit if, within the meaning of the Elkins Act, Akin Company was not, under the facts presented, the shipper or the party prohibited from receiving rebates, concessions or discriminations.

Generally speaking, corporations do not lose their identity merely because they are owned by the same stockholders, and have the same officers and occupy the same office rooms as other corporations. Press Co., Inc., v. National Labor Relations Board, 73 App.D.C. 103, 118 F.2d 937; Continental Oil Co. v. Jones, 10 Cir., 113 F.2d 557; Central Trust Co. v. Calumet Company, 260 Ill.App. 410. However, they may merge their identities, under certain conditions, either partly or wholly, or they may retain them for certain purposes, and, at the same time, merge them for other purposes, when to retain them would circumvent the plain and unambiguous intent of a prohibitory Congressional enactment. The general rule that a corporation and its stockholders are deemed separate entities is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

The pertinent portion of the applicable statute is as follows: " * * * it shall be unlawful for any person, * * * or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate * * * commerce by any common carrier subject to said chapter *whereby* any such property shall *by any device* whatever be *transported at a less rate* than that named in the tariffs published and filed by such carrier * * * or *whereby any other advantage* is given or *discrimination* is

practiced * * *." (Our emphasis) 49 U.S.C.A. § 41(1).

Plaintiff contends that it was not a shipper within the meaning of the Elkins Act, because neither it nor Akin paid any part of the freight bill, or the freight differential. It urges that a shipper for the purposes of the Elkins Act is one who is benefited by receiving rebates or commissions, so that he obtains the transportation of property at a price less than the published freight rate; and that one who does not pay, and is in no way liable for payment of the freight bill, irrespective of how much he may be paid in mileage allowances, will not be receiving a rebate or a concession, so that the freight is transported at less than the published rate.

It is quite true that the one who paid the freight in this case never received any rebate, and the full amount required by the tariff was paid by him. However, the Act is not only concerned with those rebates, concessions or discriminations whereby property is transported at a less rate than permitted by the published tariffs, but it explicitly prohibits all rebates, concessions or discriminations *"whereby any other advantage is given or discrimination is practiced,"* not alone to the shipper, but to any one materially interested in such transportation.

Under the facts here presented we think Akin was the shipper, regardless of the fact that it paid no part of the freight. In United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 936, 84 L.Ed. 1243, the Court said: "A special allowance to a forwarder as an inducement to ship goods by a particular carrier would be an illegal rebate. Similarly, * * * forwarders are shippers protected by the Interstate Commerce Act from discrimination by carriers." Likewise we think a special allowance by the carrier to Akin, directly or indirectly, must be considered as an inducement to Akin to ship its goods by a particular carrier, and this is true regardless of who pays the freight. Such special allowance to Akin, if made, might not be considered a rebate in the strict sense of the word, but it certainly should be considered as a concession or discrimination in favor of Akin which others of its competitors did not enjoy. Such concession seems to be one of the many things which the Elkins Act intended to prohibit. We think the very clear and unambiguous language of the Act accomplished that intention. The Supreme Court has so construed it in United States v. Chicago Heights Trucking Co., supra. See also General American Tank Car Corporation v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; Use of Privately Owned Refrigerator Cars, 201 I.C.C. 323.

No issue is raised here as to the validity of the car earnings, nor of the division of those earnings between the carrier and the owners and the lessors and lessees of the cars, as such. It is only as such owner, lessor or lessee becomes a shipper that he is prohibited from accepting or receiving any part of the car earnings. Without such prohibition they would be receiving an advantageous concession which their shipper competitors would not enjoy unless they had a similar rental contract.

It seems clear that plaintiff, even though its charter permitted it to do so, could not engage also in the business in which Akin is engaged, and participate in an allocation between the plaintiff and defendant of the mileage allowance earned by the cars, without running counter to the quoted provisions of the Elkins Act. Otherwise, plaintiff, as a seller and shipper of oil, then would be receiving an advantage not extended to its competitive sellers and shippers of oil.

It would seem that the corporate form of Akin was used to avoid this dilemma. Both plaintiff and Akin are owned by the same shareholders, who hold the stock in the same proportions in each corporation are nearly as possible without issuing fractional shares. The directors are the same, and the officers are practically the same, and both companies occupy a joint suite of offices.

It is true that none of the car earnings heretofore received by plaintiff from defendant has ever been paid or credited as such to Akin, or to its stockholders as such. However, the stockholders in both companies being the same and each stockholder holding the same relative interest in both companies, each stockholder of both companies, as an individual, has received payment or credit from plaintiff for precisely the same proportion of the car earnings he would have received had any part of the car earnings been paid directly by plaintiff to Akin. Thus has been accomplished indirectly, by a mere corporate form, that

which the Elkins Act seems to prohibit. For this reason we think the corporate form of Akin should be disregarded, and we hold that plaintiff and Akin were one and the same for the purpose of applying the Elkins Act.

Judgment affirmed.