**STATE OF SOUTH DAKOTA, Plaintiff,**

v.

**The NATIONAL BANK OF SOUTH DAKOTA, Sioux Falls, and First Bank Stock Corporation, Defendants.**

**Civ. No. 1353.**

United States District Court
D. South Dakota, S. D.

July 17, 1963.

Frank L. Farrar, Atty. Gen., and Joe Bottum, III, Asst. Atty. Gen., Pierre, S. D., for plaintiff.

M. T. Woods, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and Curtis L. Roy, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for defendants.

Roswell Bottum, Rapid City, S. D. (Horace R. Hansen, of Hansen, Hazen & Lynch, St. Paul, Minn., was with him on the brief), for Independent Bankers Association as amicus curiae.

Roswell Bottum, Rapid City, S. D., also appeared in behalf of the South Dakota Independent Bankers Association as an amicus curiae.

MICKELSON, Chief Judge.

This is an action brought by the State of South Dakota against the National Bank of South Dakota, Sioux Falls, South Dakota, and First Bank Stock Corporation, Minneapolis, Minnesota. Hereinafter the defendants will be referred to as the National Bank and First Bank Stock.

For reasons that will be discussed more fully later, the Court is of the opinion that the action arises under a law of the United States and that jurisdiction is based upon 28 U.S.C.A. § 1331(a).

The National Bank of South Dakota is a national banking association organized

under the laws of the United States. First Bank Stock Corporation is a bank holding company registered as such under the Bank Holding Company Act of 1956, 12 U.S.C.A. §§ 1841–1848, and having its principal place of business at Minneapolis, Minnesota.

On December 6, 1962, the National Bank acquired all of the assets and liabilities of three state banks, whereupon the banks merged into the National Bank. Prior to December 6, 1962, the controlling stock interest in the state banks, the Farmers and Merchants Bank, Platte, South Dakota; Farmers and Merchants Bank, Presho, South Dakota; and Farmers and Merchants Bank, Wessington Springs, South Dakota, was held by Mr. N. J. Thomson and members of his family. Hereinafter the three banks will be referred to as the Thomson banks.

The Comptroller of the Currency issued his certificates of approval on December 6, 1962, and on that same day the National Bank established branches at Platte, Corsica, Presho and Wessington Springs, South Dakota, the municipalities in which the Thomson banks had maintained banking offices.

The merger of the Thomson banks into the National Bank was the result of an "Agreement of Merger and Plan of Reorganization" entered into on October 9, 1962, by the Thomson banks, the National Bank and First Bank Stock. By the terms of the agreement, the stockholders of the Thomson banks were to receive shares of First Bank Stock stock in return for all of the business, properties and assets of the Thomson banks. The stock in the Thomson banks was to be surrendered for cancellation. The merger was carried out in accordance with this agreement.

On February 21, 1963, the Attorney General of South Dakota filed a complaint in this court. Count I of the complaint alleges that the merger of the Thomson banks with the National Bank was illegal and that the operation of the Thomson banks as branches of the National Bank is in violation of 12 U.S.C.A. § 36(c), SDC 1960 Supp. 6.0402, and Rule 17 of the Rules and Regulations of the South Dakota State Banking Commission. The complaint also alleges that substantial and irreparable harm will result to the State of South Dakota, to the public, to the state regulated banking system, and to the state banks operating under the state banking laws unless the defendants are enjoined from committing and continuing to commit their illegal acts.

Count II of the complaint alleges a violation by First Bank Stock of the Bank Holding Company Act of 1956, 12 U.S. C.A. §§ 1841–1848.

The complaint asks for a declaratory judgment, a permanent injunction against the National Bank enjoining it from operating the branch banks, and an order directing defendants to divest themselves of the assets of the Thomson banks to the extent that the holding and owning of such assets is prohibited by law.

Defendants filed a motion to dismiss. Both sides made motions for summary judgment pursuant to Rule 56, F.R.Civ. P., there being no genuine issue of material fact.

Upon request, the Court granted Mr. Roswell Bottum, Rapid City, South Dakota, and the Independent Bankers Association, Sauk Centre, Minnesota, leave to appear as amicus curiae.

The defendants' motion to dismiss is based upon the contention that the State is not a proper party to bring this action. Since this contention is basic to the disposition of the case, the Court will discuss it first.

National banks exist solely by virtue of federal law. Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700 (1896). The present system of national banks was created by the National Banking Act of 1863, 12 Stat. 665, which was replaced a year later by the Act of 1864, 13 Stat. 99, Rev.Stat. 5133–5156, (1875). The present law governing national banks is found in 12 U.S.C.A. §§ 21–213.

■ A national bank is subject to state law so long as the state law does

not interfere with the purposes of the bank's creation, does not destroy its efficiency, and does not conflict with some paramount federal law. Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425 (1934). In a recent case, Mercantile National Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), the United States Supreme Court quoted this statement from Van Reed v. People's National Bank, 198 U.S. 554, 557, 25 S.Ct. 775, 776, 49 L.Ed. 1161 (1905):

> "'National banks are quasi-public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the Government may permit.'"

Prior to 1927, there was no provision for branch banking by national banks. In the case of First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924), the United States Supreme Court held that since there was no paramount federal law on the subject, the states were free to prohibit branch banking by national banks if they so desired.

In 1927, the McFadden Act, 44 Stat. 1224, authorized national banks to establish branches within the limits of the municipality in which they were situated if the state law permitted state banks to establish and operate similar branches. The Banking Act of 1933, 48 Stat. 162, expanded this authority to permit the establishment of branches outside the city in which the national bank was located. The present provision for branch banking by national banks is found in 12 U.S.C.A. § 36(c). The part of the statute that is pertinent to the instant case reads as follows:

> "(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches * *

(2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

Branch banking in South Dakota is authorized by SDC 1960 Supp. 6.0402, which provides that:

> "A branch office or a branch bank may be conducted by a bank only with the permission of the Commission under such rules and regulations as the Commission shall prescribe, and such permission to be in the sole discretion of the Commission. * * *"

Rule 17 of the Rules and Regulations of the State Banking Commission provides that:

> "No such branch office or branch bank shall be established outside of the county, or adjoining counties, of the bank's domicile, or more than fifty miles away from such bank."

The State contends that because the Thomson banks are located more than fifty miles from the National Bank, their operation as branches by the National Bank is in violation of state law. The State maintains that because § 36(c) looks to state law to determine whether national banks may establish branches, the State is a proper party to bring this action, and has not only the right but the duty to enforce and vindicate its law; and since the federal law looks to state law on the question of branch banking, there can be no conflict with any paramount federal law on the subject, and thus the State is free to enforce its local law. In support of this position, the State relies upon First National Bank in St. Louis v. State of Missouri, supra, wherein it was said that the Missouri statute prohibiting branch banking did not conflict with the laws of the United

States. The Supreme Court reasoned that since the state statute was valid as applied to national banks, and since the sanction behind the statute was that of the state and not the federal government, the power of enforcing the law rested with the state and not the federal government. The Court specifically stated that the state was not seeking to enforce the law of the United States, but was seeking to vindicate and enforce its own law.

The defendants argue that the case can be distinguished on several grounds. First, in that case the action was brought in state court to enforce state law. In the instant case, this court would have no jurisdiction to proceed if the State sought to enforce South Dakota law. This is not a diversity case. Rather, as has already been indicated, it is a case arising under the laws of the United States, i. e., 12 U.S.C.A. § 36(c) and 12 U.S.C.A. §§ 1841–1848, and thus cognizable under 28 U.S.C.A. § 1331(a). Suburban Trust Co. v. National Bank of Westfield, D.C.N.J., 1962, 211 F.Supp. 694, 698.

Secondly, the First National Bank in St. Louis case was tried before there was any federal law permitting national banks to establish branches. Thus the state was free to adopt and enforce its own law prohibiting branches.

■ Under 12 U.S.C.A. § 36(c), state law is adopted by the federal government and made the measuring stick by which it is determined whether national banks may establish branches. National Bank of Detroit v. Wayne Oakland Bank, 6 Cir., 1958, 252 F.2d 537; Suburban Trust Co. v. National Bank of Westfield, supra; Commercial State Bank of Roseville v. Gidney, D.C.D.C., 1959, 174 F.Supp. 770, aff'd Gidney v. Commercial State Bank of Roseville, 1960, 108 U.S.App.D.C. 37, 278 F.2d 871; Millard v. National Bank of Detroit, 338 Mich. 610, 61 N.W.2d 804 (1953).

In the Millard case, supra, the Michigan Supreme Court held that it had no jurisdiction to hear a quo warranto action brought by the Attorney General of Michigan against a national bank. The court held that under 12 U.S.C.A. § 36 (c), state law is the measuring stick for the application of federal law. Any violation of the standard fixed by Congress for the establishment of branches by national banks, i. e., the local state law on branch banking by state banks, is a violation of federal law, not state law. Thus the state court was without jurisdiction to proceed in the matter.

■■ It is clear that the purpose of Congress in adopting § 36(c) was to insure equality between state and national banks regarding the establishment of branches. National Bank of Detroit v. Wayne Oakland Bank, supra. The adoption of § 36(c) was a practical way of accomplishing this purpose. The result of the adoption of § 36(c) is that there is now paramount federal law on the subject, and thus the states may no longer adopt and enforce their own laws restricting or prohibiting branching by national banks. It is true that states may restrict or prohibit branching by their own state banks, with the result that national bank branching is similarly restricted or prohibited. This is possible because Congress made it so. There is little question that Congress could have given national banks authority to establish branches that would in no way depend upon state law. There is nothing to indicate that Congress intended that the states should be able to enforce their own local law regarding branching against national banks.

The State has cited only one case in which a state has been a party in a suit in federal district court to enjoin a national bank from establishing a branch. In that case, Suburban Trust Co. v. National Bank of Westfield, supra, a state bank brought an action in federal district court for an injunction against a national bank and for a declaratory judgment that the Comptroller of the Currency's approval of the national bank's branch was invalid. Subsequently, the Attorney General and Commissioner of Banking and Insurance of New Jersey

started an action in state court for a declaratory judgment that the operation of the national bank's branch was illegal and without authority, and for an injunction restraining further operation of the branch. The defendant national bank removed the action to federal court. The court accepted jurisdiction over the two cases in accordance with 28 U.S.C.A. § 1331(a), after stating that the cases arose under a federal statute, i. e., 12 U.S.C.A. § 36(c). The court held that plaintiff Suburban Trust Co. had standing to prosecute the action, on the ground that it had a sufficient property interest in the matter to entitle it to seek relief in federal court. Since the defendant bank did not challenge the standing of the Attorney General and Commissioner of Banking and Insurance to prosecute the action, the court specifically refrained from expressing any opinion on the question.

In the case of Commercial State Bank of Roseville v. Gidney, supra, two state banks were held to have standing to bring a suit in federal district court for a preliminary injunction restraining the Comptroller of the Currency from issuing a certificate authorizing a national bank to open a branch bank. The court found that because of the proximity of the proposed branch and the nature of the banking business in the immediate area, plaintiff banks were threatened with irreparable and immediate damage which gave them standing to maintain the action.

In National Bank of Detroit v. Wayne Oakland Bank, supra, a state bank brought an action in federal district court for a declaratory judgment that it would be unlawful for a national bank to open a branch bank in the same city in which the plaintiff bank had previously established a branch. The state bank also asked for a restraining order to prevent the Comptroller of the Currency from issuing a certificate of authority to the national bank, together with an order restraining the national bank from establishing and operating the branch office. The district court issued the restraining orders. In its decision denying a rehearing en banc of its per curiam decision affirming the district court's action, the Court of Appeals for the Sixth Circuit stated, at 252 F.2d 537, 544:

"As to the standing of The Wayne Oakland Bank to maintain its suit, it was faced with invasion of property rights, and injury from a competition which was prohibited by the federal statutes subjecting national banks to the same rules of law as cover state banks. The district court found, as a fact, that the competition resulting from the opening and operation of a branch by the National Bank of Detroit would certainly cause inestimable damage to The Wayne Oakland Bank. Whether the rights of a party are infringed by unlawful action of an individual or by exertion of unauthorized federal administrative power, it is entitled to have such controversy adjudicated."

These three cases illustrate that where a state bank is threatened with the invasion of a substantial property right interest, it has standing to challenge the establishment of a branch by a national bank. Even though it has been held that a state has all the remedies of a private suitor, State of Georgia v. Tennessee Copper Co., 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038 (1907), that rule avails the State little in the instant case. The operation of the Thomson banks as branches by the National Bank does not appear to invade any established property rights of the State or of any state bank. The State has not demonstrated that any individual is being adversely affected by the operation of the branch banks. Even if such a showing were made, there is some question whether the State could bring an action in behalf of private citizens. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The case of Hopkins Federal Savings & Loan Association v. Cleary, 296 U.S. 315, 56 S.Ct. 235, 80 L.Ed. 251 (1935), relied upon by the State is not in point. That

case involved the constitutionality of a federal statute which authorized state savings and loan associations to convert to federal savings and loan associations. In holding that the State of Wisconsin had standing to challenge the conversion of a state association to a federal association, the Supreme Court emphasized the fact that the state had become a suitor to protect the interests of its citizens against the unlawful acts of corporations created by the state itself. Obviously, that is not the situation here. National banks are created by federal law; their branches are authorized by federal law, although state law is adopted as a measuring stick.

It has been held that violations of the National Bank Act may be challenged only by the federal government. Kerfoot v. Farmers' & Merchants' Bank, 218 U.S. 281, 31 S.Ct. 14, 54 L.Ed. 1042 (1910); National Bank of Genesee v. Whitney, 103 U.S. 99, 26 L.Ed. 443 (1880); Union National Bank v. Matthews, 98 U.S. 621, 25 L.Ed. 188 (1878).

The Comptroller of the Currency is charged under 12 U.S.C.A. § 93 with the duty of prosecuting actions for violations of any of the provisions of the National Bank Act. There is no provision for enforcement of the national banking laws by the states. In State of Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904), the Supreme Court held that the State of Minnesota had no standing to enforce an alleged violation of the federal anti-trust law, since there was no provision in the statute authorizing enforcement by the states.

■ Count II of the complaint alleges a violation of the Bank Holding Company Act of 1956, 12 U.S.C.A. §§ 1841–1848. Before we discuss the provisions of the Act and the alleged violation thereof, the question of the State's standing to raise the issue must be met.

The enforcement of the Bank Holding Company Act of 1956 is dependent upon criminal prosecution. 12 U.S.C.A. § 1847. There is no provision in the Act for civil enforcement, and although there

apparently have been no decisions respecting the enforcement of the Act, the legislative history of the Act leads the Court to believe that Congress clearly intended to limit the enforcement to criminal prosecutions. See 1956 U.S.Code Cong. & Admin.News, Vol. 2, pp. 2482–2513. Where Congress has not provided for civil suits to enforce federal legislation, it is not for the courts to do so. See Riss & Company v. Association of American Railroads, D.C., 178 F.Supp. 438 (1959).

For the reasons heretofore stated, the Court is of the opinion that the State of South Dakota has no standing to challenge the validity of the establishment and operation of the three branch banks by the defendant National Bank, and that likewise, the State has no standing to maintain an action to enforce the provisions of the Bank Holding Company Act of 1956.

Although the suit must be dismissed for lack of a proper party plaintiff, the Court will discuss the other contentions of the parties.

### The Applicability of Rule 17 to National Banks

■ The defendants contend that Rule 17 of the Rules and Regulations of the South Dakota State Banking Commission has no application to national banks, and thus does not prohibit the National Bank from operating the Thomson banks as branches.

The South Dakota Banking Commission is given the authority by SDC 6.0205(3) to:

"* * * adopt all necessary rules and regulations not inconsistent with the laws of this state for the management and administration of banks doing business under the laws of this state."

In SDC 1960 Supp. 6.0402 it is stated that:

"A branch office or a branch bank may be conducted by a bank only with the permission of the Commission under such rules and regula-

tions as the Commission shall prescribe, and such permission to be in the sole discretion of the Commission. No branch office shall be operated in any city or town after any state or national bank has received authority to operate in such town or city. Only one branch office shall be established in any town or city."

As has already been stated, 12 U.S.C.A. § 36(c) authorizes national banks to establish branches in those states where the statute law of the state specifically grants state banks the power to establish and operate branches. Further, § 36(c) provides that national banks are subject to the restrictions as to location of branches imposed on state banks by the law of the state.

Defendants argue that because the authority given to national banks to establish branches is based upon the statute law of the state, the restrictions as to location must likewise be based upon the statute law of the state, and because Rule 17 is merely an administrative rule and not part of the statute law of South Dakota, it is not applicable to national banks. In support of this argument, defendants refer to the legislative history of § 36(c). Summarized briefly, this legislative history shows that as originally proposed, the so-called Bratton Amendment § 36(c) authorized national banks to establish branches in those states in which state banks were permitted to do so by the law of the state. Senator Wheeler of Montana requested that the words "expressly authorized" be substituted for the word "permitted." Senator Wheeler was concerned that a state statute that was silent on the subject might be construed as permitting branch banking. Thus it is apparent that "the law of the state" was intended to mean an affirmative expression by the state legislature. The day following the proposed amendment requested by Senator Wheeler, Senator Blaine of Wisconsin proposed the following addition to the Bratton Amendment: "and under restrictions as to location imposed by the law of the state on state banks." This leads to the conclusion that the phrase "law of the state" was used in the same context as it was in the first part of the amendment. In the Conference Committee, the word "statute" was placed before the phrase "law of the state" in the first part of the amendment. No explanation was given for the insertion of this word.

From this legislative history it seems apparent that Congress was concerned that national banks be authorized to branch only where the state legislatures have adopted statutes authorizing state banks to establish branches. It seems equally apparent that Congress intended that the restrictions as to location also be based upon affirmative legislative action by the states. This conclusion is supported by the words of the Court of Appeals for the Sixth Circuit in National Bank of Detroit v. Wayne Oakland Bank, supra, 252 F.2d 537 at 540:

"The history of federal legislation regarding branch banking and the statutes applying thereto leave a clear and definite impression that Congress intended, with respect to the location of branches, that a national bank should have no greater rights than it would if it were a state bank, and that a national bank was to be permitted to establish and operate a branch in a state only at such a point as it could, *by express provisions of a state statute,* establish and operate a branch if it were then a state bank." (Emphasis supplied)

The State contends that administrative rules and regulations are part of the law of the state, citing the case of United States v. Howard, 352 U.S. 212, 77 S.Ct. 303, 1 L.Ed.2d 261 (1957). This is undoubtedly true. There is, however, a difference between the law of a state and the statute law of a state. It has been stated that the word "statute", as used in 28 U.S.C.A. § 2281, comprehends all state enactments, including those expressed through administrative orders. Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 343 fn. 3, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

850

On the other hand, it has been said that "An administrative regulation, of course, is not a 'statute.' While in practical effect regulations may be called 'little laws,' they are at most but offspring of statutes." United States v. Mersky, 361 U.S. 431, 437, 80 S.Ct. 459, 463, 4 L.Ed.2d 423 (1960). The Court went on to hold that the statute and regulations involved were so inextricably intertwined that the construction of the regulations involved the construction of the statute. Mr. Justice Frankfurter's dissenting opinion in the Mersky case is of interest. He stated, 361 U.S. at page 446, 80 S.Ct. at page 467:

> "The immediately relevant ambiguity of 'statute' as a legal term derives from the fact that it may mean either the enactment of a legislature, technically speaking, that is the Congress of the United States or the respective legislatures of the fifty States; or it may have a more comprehensive scope, to wit, rules of conduct legally emitted by subordinate lawmaking agencies such as city councils or the various regulation-emitting bodies of the federal and state governments. Accordingly, whether the term 'statute,' as used in the Criminal Appeals Act of 1907, should be given the restrictive meaning, i. e., enactments by Congress, or the more extensive meaning, i. e., Treasury regulations, cannot be determined merely by reading the Criminal Appeals Act of 1907. The answer will turn on the total relevant environment into which that Act must be placed, including past relevant decisions, the legislative history of the Act, and due regard for the consequences resulting from a restrictive as against a latitudinarian construction."

It is the Court's opinion that the phrase "statute law of the State" in § 36(c) refers to the enactments of the legislature and does not include the administrative rules and regulations adopted pursuant to such enactments. Under this view, while Rule 17 may be a part of the law

of South Dakota, it is not a part of the statute law.

It is significant to note that in the hereinbefore cited cases in which branching by national banks was challenged as violative of state restrictions on location, the state restriction on location was a statutory restriction. No case has been cited by plaintiff, and we have found none, in which it was held that branching by a national bank is in any way controlled by any state-imposed restriction on location not embodied in a statute.

The ease with which the rules and regulations of the State Banking Commission can be changed lends support to the argument that Congress intended that national banks should be subject to the statute law of the state rather than to administrative rules and regulations of an administrative agency. The Commission need not hold public hearings. SDC 65.0106 requires the written assent of a majority of the Commission to any change in its rules. The rules must be filed with the Secretary of State and with the clerks of court throughout the state. After a thirty day waiting period, the rule becomes effective. While of course it is not for this court to question the wisdom of state legislation, Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), the fact that the legislature has authorized the State Banking Commission to promulgate rules and regulations in the foregoing manner is of significance in determining what Congress intended when it adopted state law as the measuring stick for the establishment of branches by national banks.

Defendants contend that Rule 17 is not applicable to national banks because it is based upon the permission granting power of the Commission, which is applicable only to state banks.

Under the provisions of SDC 1960 Supp. 6.0402, supra, a bank may conduct a branch office or a branch bank only with the permission of the Commission under such rules and regulations as the Commission in its sole discretion shall prescribe.

Clearly, a national bank need not obtain permission from the Commission in order to establish a branch. Only the authorization of the Comptroller of the Currency need be obtained. Rushton ex rel. State Banking Com'r v. Michigan National Bank, 298 Mich. 417, 299 N.W. 129, 136 A.L.R. 458 (1941). Since the adoption of rules and regulations is merely a part of the permission granting process of the Commission, argue defendants, such rules and regulations are not applicable to national banks. The Court finds merit in this contention. Section 36(c) says nothing about looking to a state agency for approval of national bank branches.

Another interpretation of SDC 1960 Supp. 6.0402 is that the rules and regulations of the Commission apply to the conduct of state bank branches once they have been established. Under this interpretation, the rules and regulations are not applicable to national banks since a state has no authority to regulate the manner in which a national bank conducts its affairs. Easton v. Iowa, 188 U.S. 220, 23 S.Ct. 288, 47 L.Ed. 452 (1903).

### The Invalidity of Rule 17

Defendants contend that Rule 17 is invalid because it is in conflict with South Dakota law.

Under subsection (3) of SDC 6.0205, the State Banking Commission is given power:

"* * * to adopt all necessary rules and regulations not inconsistent with the laws of this state for the management and administration of banks doing business under the laws of this state."

The terms "branch office" and "branch bank" are defined in SDC 6.0101 in the following words:

"(7) 'Branch office', a branch place of business maintained by a bank within the county of its domicile or an adjoining county to receive deposits, issue drafts and cashier's checks, make change, pay checks, and other clerical and routine functions, but not including making loans and discounts;

"(8) 'Branch bank', a branch place of business maintained by a bank for conduct of banking."

It is apparent that there is no geographic restriction on the location of a branch bank in this section of the statute as there is on branch offices.

By the terms of SDC 1960 Supp. 6.0402, branch banks may not be established in any city or town of less than three thousand population where there is an existing bank doing business, or in any city of more than three thousand but less than fifteen thousand population where there are two or more banks doing business. This is the only legislative limitation on the location of branch banks. Because the legislature omitted any further restrictions, argue defendants, it clearly intended that there be none as to geographic locations. In reply, the State contends that SDC 1960 Supp. 6.0402 is a combination of two statutes, and that the principle of *expressio unius est exclusio alterius* does not apply. Chapter 2, 1933, Special Session of the Legislature, authorized the establishment of branch banks in the sole discretion of the State Banking Commission, subject to such rules and regulations as it might prescribe. Chapter 54 of the 1935 Session Laws authorized branch offices in the same or adjoining counties. In 1939, these two statutes were combined as SDC 6.0402. Moreover, goes the argument, the two acts were passed during the Depression years, when many banks were failing, and that it was the intention of the legislature to permit certain of the stronger banks to take over some of the failing banks and operate them as branches. Thus the provision for branch banking.

Assuming that economic conditions of the state during the Depression years had something to do with the legislature enacting Chapter 2, 1933 Special Session, and Chapter 54 of the 1935 Session, so as to permit the stronger banks to take over some of the failing banks and oper-

ate them as branches, that would be a logical reason for not placing any restrictions on the location of branch banks.

The Court agrees with defendants that Rule 17 is in conflict with the statutory plan for branch banking in South Dakota and is thus invalid.

The State cites an opinion of the South Dakota Attorney General to the effect that Rule 17 is not in conflict with any of the express limitations of SDC 1960 Supp. 6.0402. 1959–1960 AGR 220. According to that opinion, so long as the Commission observes the limitations contained in 6.0402, it may impose any further limitations on the establishment of branch banks as it sees fit.

Perhaps Rule 17 is not in conflict with the *express* limitations of SDC 1960 Supp. 6.0402. This is not to say that it is not in conflict with the implicit legislative intent that there be no further limitations on branch banks.

██ The defendants also contend that Rule 17 is invalid because the Commission exceeded the powers conferred upon it by SDC 6.0205(3) and SDC 1960 Supp. 6.0402. Under these statutes, the Commission is authorized to establish administrative rules for the management and administration of banks. The defendants argue that the restriction on location imposed by Rule 17 goes beyond anything the legislature may have contemplated by the words "management" and "administration." Thus by adopting Rule 17, the Commission exercised legislative powers not conferred upon it by the statute.

The defendants' argument is well taken. There is nothing in SDC 6.0205(3) that indicates that the legislature contemplated that the rules adopted by the Commission should extend beyond the area of bank operation, as contrasted to bank location. For this reason it would seem that the Commission went beyond its rule making powers. See Hanson v. C. I. R., 8 Cir., 1962, 298 F.2d 391, wherein the Court of Appeals held that the rule in question was more in the nature of legislation than interpretation, and thus went beyond the rule making power of the Internal Revenue Service.

By adopting Rule 17, the Commission put into effect a policy on branch banking that was not expressed by the legislature. In the past, such an exercise of power has been held invalid by the South Dakota Supreme Court. St. Charles State Bank v. Wingfield, 36 S.D. 493, 155 N.W. 776 (1915). The present case is different from the situation that existed in Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1 (1956); and Utah Idaho Sugar Co. v. Temmey, 68 S.D. 623, 5 N.W.2d 486 (1942). In those cases it was held that the legislature had established a basic policy, together with standards by which the administrative agency should apply its delegated powers. Because the administrative agencies had not departed from these standards, the South Dakota Court upheld their actions.

### Violation of the Bank Holding Company Act of 1956

██ In Count II of the complaint, the State alleges that the acquisition of the assets of the Thomson banks by the National Bank violated the right of the State of South Dakota to keep an out-of-state bank holding company from expanding its holdings within the state.

Title 12 U.S.C.A. § 1842(d) provides that:

"Notwithstanding any other provision of this section, no application shall be approved under this section which will permit any bank holding company or any subsidiary thereof to acquire, directly or indirectly, any voting shares of, interest in, or all or substantially all of the assets of any additional bank located outside of the State in which such bank holding company maintains its principal office and place of business or in which it conducts its principal operations unless the acquisition of such shares or assets of a State bank by an out-of-State bank holding company is specifically authorized by the statute laws of the State

in which such bank is located, by language to that effect and not merely by implication."

This section of the statute was introduced as an amendment by Senator Douglas of Illinois. Senator Douglas summarized the purpose of his amendment in these words:

"Our amendment would prohibit bank holding companies from purchasing banks in other States unless such purchases by out-of-State holding companies were specifically permitted by law in such states." 102 Cong.Rec. 6860, April 24, 1956.

The defendants contend that there has been no violation of 12 U.S.C.A. § 1842 (d) because that section is inapplicable to the merger in the instant case. Rather, they say, the merger agreement between the Thomson banks, the National Bank and First Bank Stock is governed by 12 U.S.C.A. § 1842(a), the pertinent part of which provides that:

"It shall be unlawful except with the prior approval of the Board * * * (3) for any bank holding company or subsidiary thereof, other than a bank, to acquire all or substantially all of the assets of a bank * * *."

The phrase "other than a bank" in subsection (3) creates an exception to the restrictions contained in the remainder of the statute. The exception applies when the assets of a bank are acquired by a bank which is a subsidiary of a holding company.

The Board of Governors of the Federal Reserve System recognized this fact and recommended a change in the statute which would have withdrawn the exception. Federal Reserve Bulletin, July 1958, pp. 787-89. The change was not adopted. In 1960 the recommendation was withdrawn by the Board with the explanation that since the Bank Merger Act of 1960, 12 U.S.C.A. § 1828(c), required the prior approval of one of the Federal bank supervisory agencies in practically all cases of bank mergers and absorptions, the extension of the coverage of the Bank Holding Company Act to cover bank mergers in which holding company banks are involved would produce an unjustified duplication of supervision. 47th Annual Report of the Board of Governors of the Federal Reserve System, 1960, pp. 98-99, as quoted in a letter from the Hon. James J. Saxton, Comptroller of the Currency, to the Hon. Wright Patman, Chairman, Committee on Banking and Currency, March 14, 1963. Hearings before the House Committee on Banking and Currency, 88th Cong., 1st Sess., pp. 153-155.

The State argues that the words "Notwithstanding any other provision of this section, no application shall be approved * * *" in § 1842(d) make that subsection applicable to the instant case. This is not true, however, since under § 1842(a) (3), approval by the Board of Governors is not required when a subsidiary bank of a holding company acquires the assets of another bank. The Board of Governors, in a letter to Mr. Joseph H. Colman, Chairman of the Board of First Bank Stock Corporation, dated April 30, 1963, stated that it has consistently construed § 1842(d) to apply only to cases in which Board approval is required under § 1842(a). The interpretation of the Board of Governors, while not controlling, is entitled to substantial weight. First National Bank in Billings v. First Bank Stock Corporation, 9 Cir., 1962, 306 F.2d 937, 941. The Court believes that the Board's interpretation of § 1842(d) is correct. It follows, then, that the acquisition of the assets of the Thomson banks fell within the exception contained in § 1842(a) (3) of the Bank Holding Company Act of 1956.

The State would have the Court pierce the corporate veil in order to determine the true nature of the merger transaction. According to the State, the use of the National Bank to acquire the assets of the Thomson banks was merely a subterfuge by which First Bank Stock sought to circumvent and avoid the restrictions of the Bank Holding Company Act. The Court is asked to disregard corporate entities in order to insure that the spirit as well as the letter of the Bank

Holding Company Act is respected. The Court is not unsympathetic to the State's position on this matter. An exception exists in the Act, however, and Congress has not seen fit to withdraw it. While it is true that courts have the power to pierce the corporate veil when the situation warrants such action, Ohio Tank Car Co. v. Keith Ry. Equipment Co., 7 Cir., 1945, 148 F.2d 4, the Court does not believe that this is a proper case for the exercise of such power. There was no fraud or bad faith involved in this merger. It is true that the stockholders of the Thomson banks received First Bank Stock stock in exchange for the assets of the banks. There were good reasons why this was desirable from their standpoint, however. By receiving stock instead of cash, the stockholders had the benefit of a tax-free exchange. Moreover, they received shares of a stock that is traded in the over-the-counter market and whose day to day market value can thus be readily ascertained. The merger does not strike the Court as being a subterfuge, and the Court will not interfere with it merely because it may have enabled First Bank Stock to take advantage of a legitimate exception in the Bank Holding Company Act.

Throughout their briefs and during oral argument, counsel for the State and the amicus curiae spoke of the dire effects an adverse decision in this case would have upon the dual banking system and upon the healthy competition that has prevailed between state and national banks. The Court is familiar with the operation of state banks in South Dakota and is hopeful that the present system of dual banking will be preserved. The Court cannot substitute its social and economic views for those expressed by Congress, however, and cannot change the law to fit the needs of the occasion. It would seem that if the people of South Dakota wish to impose statutory restrictions on the location of national bank branches, they are not powerless to do so. That decision belongs to the legislature and not to this Court. Likewise, if the exception in the Bank Holding Company Act of 1956 should be withdrawn, it is the task of Congress to do so.

Defendants' motion to dismiss and for summary judgment in their favor are granted, and plaintiff's motion for summary judgment in its favor is denied. Counsel for defendants will prepare and submit an appropriate final order and judgment.