**STATE OF SOUTH DAKOTA, Appellant,**

v.

**The NATIONAL BANK OF SOUTH DAKOTA, SIOUX FALLS, and First Bank Stock Corporation, Appellees.**

**No. 17460.**

United States Court of Appeals
Eighth Circuit.

Aug. 10, 1964.

Fred Hendrickson, Sp. Asst. Atty. Gen., Pierre, S. D., made argument for appellant and filed brief with Frank L. Farrar, Atty. Gen., and Gary R. Richards, Asst. Atty. Gen., Pierre, So. D.

Horace R. Hansen, of Hansen & Hazen, St. Paul, Minn., made argument for amicus curiae Independent Bankers Ass'n and filed brief.

M. T. Woods, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and Curtis L. Roy, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., made argument for appellees and filed brief with Robert O. Flotten and Robert A. Jensen, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff State of South Dakota appeals from order sustaining defendants' motion for summary judgment and the resulting final judgment dismissing its complaint. Judge Mickelson's well-considered opinion setting out the facts, the issues, the applicable statutes and the basis for his decision is reported at 219 F.Supp. 842.

Plaintiff's complaint seeks a declaratory judgment and injunction against the defendants National Bank of South Da-

kota, a national bank located at Sioux Falls, South Dakota (hereinafter called National Bank) and First Bank Stock Corporation, a bank holding company owning over 90% of the stock of National Bank.

All parties moved for summary judgment. There is no dispute as to material facts. This action arises out of an "Agreement of Merger and a Plan of Reorganization" dated October 9, 1962, entered into by and between First Bank Stock Corporation, its subsidiary National Bank, and three state chartered banks known as Farmers and Merchants Bank, of Wessington Springs, Platte and Presho, South Dakota, controlled by N. J. Thomson, hereinafter jointly called Thomson Banks. Under such agreement, all acceptable assets, being substantially all of the assets, of Thomson Banks were to be transferred to National Bank. Liabilities of the Thomson Banks were to be assumed by National Bank; the stock of Thomson Banks was to be surrendered for cancellation; National Bank was to increase its capital stock by $500,000, issuing 5000 shares of $100 par value stock to First Bank Stock Corporation, and First Bank Stock Corporation was to pay Thomson Banks stockholders with stock in its own corporation in accordance with an agreed ratio. The agreement provided that the capital surplus and undivided profits of the merged bank would be equal to that of the merging banks. Such agreement was unanimously approved by the stockholders of each affected corporation.

The Comptroller of the Currency pursuant to federal law on December 6, 1962, approved the merger and certified that the merger of the Thomson Banks into National Bank had been accomplished in accordance with federal statutes. On the same date, the Comptroller approved National Bank's application for establishing branches at Platte, Presho and Wessington Springs, South Dakota, and also at Corsica, South Dakota, where the Platte bank had previously maintained a branch. The merging Thomson Banks were the only banks located in such towns.

Plaintiff bases jurisdiction upon 28 U.S.C.A. § 1331(a), asserting a federal question is presented and that the jurisdictional amount is involved. No diversity of citizenship exists and no claim of jurisdiction based upon diversity of citizenship is made.

Count I attacks the merger as being in violation of 12 U.S.C.A. § 36(c) regulating establishment of branches by national banks.

Count II is based upon an alleged violation of the Federal Bank Holding Company Act, 12 U.S.C.A. §§ 1841–1848.

Independent Bankers Association has by leave of court filed brief amicus curiae in support of plaintiff's position and has participated in oral argument.

Plaintiff's standing to maintain each count of the complaint is challenged. The trial court discussed the jurisdiction issue at pages 846–848 of 219 F.Supp. and determined that plaintiff lacked standing to maintain either count of the complaint. The court then proceeded to consider plaintiff's complaint upon the merits and found against the plaintiff.

With respect to Count I, the question of standing has become moot. See United States v. Alaska Steamship Co., 253 U.S. 113, 115–116, 40 S.Ct. 448, 64 L.Ed. 722.

12 U.S.C.A. § 36(c), so far as here material, authorizes national banks to establish branches in states where statutes specifically grant state banks power to operate branches subject to all restrictions on location imposed upon state banks by state law.

South Dakota law authorizes state banks to establish branches subject to certain limitations not here applicable. Plaintiff's standing to challenge the Comptroller's authorization of the branches here involved, if it exists at all, must arise out of Rule 17 adopted by the State Bank Board in 1945. Such rule, to the extent here material, prohibits establishment of a branch bank more than 50

miles from its home office. It is agreed the branch banks here involved are located more than 50 miles from the home office of National Bank at Sioux Falls. The trial court held Rule 17 to be invalid upon the basis that it goes beyond applicable South Dakota statutory standards. The South Dakota Supreme Court in Livestock State Bank v. State Banking Commission, 127 N.W.2d 139, decided while this appeal was pending, squarely held that "Rule 17 is invalid as an unwarranted attempt by the State Banking Commission to exercise legislative power." Such determination by the court forecloses any possible attack on the validity of the Comptroller's approval of the branch banks here involved.

The threshold issue presented on Count II, based upon the Bank Holding Company Act, is whether plaintiff has standing to bring this action. Upon this issue, the court states:

"The enforcement of the Bank Holding Company Act of 1956 is dependent upon criminal prosecution. 12 U.S.C.A. § 1847. There is no provision in the Act for civil enforcement, and although there apparently have been no decisions respecting the enforcement of the Act, the legislative history of the Act leads the Court to believe that Congress clearly intended to limit the enforcement to criminal prosecutions. See 1956 U.S.Code Cong. & Admin. News, Vol. 2, pp. 2482–2513. Where Congress has not provided for civil suits to enforce federal legislation, it is not for the courts to do so. See Riss & Company v. Association of American Railroads, D.C., 178 F.Supp. 438 (1959)." 219 F.Supp. 842, 848.

In Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61, the issue was whether Congress had provided for judicial review of certain National Mediation Board determinations. In holding no such remedy exists, the Court states:

"Congress for reasons of its own decided upon the method for the protection of the 'right' which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end. Whether the imposition of judicial review on top of the Mediation Board's administrative determination would strengthen that protection is a considerable question. All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced. Tutun v. United States, 270 U.S. 568, 576, 577 [46 S.Ct. 425, 426, 70 L.Ed. 738]. In such a case the specification of one remedy normally excludes another." 320 U.S. 297, 301, 64 S.Ct. 95, 97.

See Farmers' & Mechanics' Nat'l Bank v. Dearing, 91 U.S. 29, 23 L.Ed. 196; Brouk v. Managed Funds, Inc., 8 Cir., 286 F.2d 901.

The Bank Holding Company Act contains no express provision for civil enforcement. The legislative history of the Act as shown by Judge Mickelson's opinion supports the defendants' view that Congress intended the criminal enforcement provision to be exclusive. The Bank Holding Company Act was originally proposed by President Roosevelt in a message to Congress in 1938. The history of the legislation is sketched in Senate Report No. 1095, July 25, 1955; 2 U.S.Code Cong. & Admin. News (1956), pp. 2482–2513. In an earlier proposed Bank Holding Company Bill, S. 310, 77th Congress, express provision is made for civil enforcement of any liability or duty and for injunctive relief.

At various hearings before Congressional committees, Governors of the Federal Reserve System charged with the administration of the Act advocated criminal penalties as the exclusive means for enforcement. Governor Robertson, appearing before the Committee on behalf of the Board on June 24, 1952, stated:

"Bearing always in mind the desirability of keeping the legislation to a minimum, it is our feeling that the only essential measure of en-

forcement, and the most effective one, would be a provision for criminal penalties for violation of the statute or of conditions prescribed by the administering agency in granting consent to acquisitions of bank stocks. This would place complete responsibility for enforcement of the law in the Department of Justice. The administering agency would not be placed in a position in which it would be required to institue proceedings for enforcement." Hearing Before the House Committee on Banking and Currency, 82d Cong. 2d Sess., on H.R. 6504 (June 24, 1952), pp. 26–27.

Similar statements were made at subsequent hearings in subsequent years. Hearings Before the Senate Committee on Banking and Currency, 83d Cong., 1st Sess., on S. 76 and S. 1118, p. 17; Hearings Before a Subcommittee of the Senate Committee on Banking and Currency, 84th Cong., 1st Sess., on S. 880, S. 2350 and H.R. 6227 (July 5, 6, 7, 11, 12 and 14, 1955), p. 61; Hearings Before the Committee on Banking and Currency, United States Senate, on Nomination of William McChesney Martin, Jr., 84th Cong., 2d Sess., pp. 36, 37.

Thus it appears that the Act and its legislative history disclose no intent on the part of Congress to create rights to be enforced by civil litigation.

The foregoing determination on standing is conclusive and we need not exhaustively treat the attack on jurisdiction based upon the failure of the State to show that either the State or any of its citizens was aggrieved. South Dakota has not enacted any legislation respecting bank holding companies. The State concedes that there are no state banks in the immediate vicinity of the banks involved in the merger which would have sufficient standing to entitle them to maintain this action. In this respect this case is distinguishable from Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290. In that case the court determined that the plaintiff banks had standing to sue, and the court declined to pass upon the standing of the State to sue. We believe the trial court in our present case properly determined:

"The operation of the Thomson banks as branches by the National Bank does not appear to invade any established property rights of the State or of any state bank. The State has not demonstrated that any individual is being adversely affected by the operation of the branch banks." 219 F.Supp. 842, 847.

United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 is of no aid to the plaintiff. Jurisdiction in that case is based upon the Sherman and Clayton Acts which differ materially from the Acts we are here considering.

We hold that the trial court correctly dismissed the case for want of jurisdiction.

It is conceded by the parties that there are no cases directly in point upon the State's standing to bring this action. Likely for this reason, the court proceeded to give full consideration to the issues presented by this case upon the merits. We have chosen to review such decision upon the merits. Judge Mickelson's opinion, 219 F.Supp. pp. 852–854, convincingly demonstrates that the activities here attacked constitute an acquisition of assets (not of stock) by a bank (not by a holding company) and hence we agree that the transaction falls within the exception granted by § 1842(a). Such section, so far as here material, provides:

"(a) It shall be unlawful except with the prior approval of the Board * * *; (3) for any bank holding company or subsidiary thereof, other than a bank, to acquire all or substantially all of the assets of a bank * * *."

The words in the statute "other than a bank" clearly show the intention of Congress not to require a bank acquiring the assets of another bank to obtain Board

approval. The remaining subsections of § 1842, including subsection (d) largely relied upon by the plaintiff, set forth the procedures to be followed where an application to the Board of Governors is required. The words of subsection (d) reading: "no application shall be approved under this section" manifest a Congressional intention that the section only applies to instances where approval of the Board of Governors is required. As Judge Mickelson points out, such interpretation is substantiated by the legislative history and the administrative interpretation of such provisions by the Board of Governors.

Plaintiff makes the contention that the transaction is in substance an acquisition of stock rather than the acquisition of assets and hence does not fall under § 1842(a) (3). Plaintiff in its pleadings consistently urged that the transaction was an acquisition of assets by National Bank and the court so found. Plaintiff cannot thus shift its position upon appeal and assert an issue not raised in the trial court. In any event the record clearly shows that National Bank acquired the assets of the Thomson Banks, not their stock.

Plaintiff urges that the corporate veil should be pierced and that the transaction should be treated as an acquisition by the holding company rather than by the bank. The trial court properly rejected such contention, stating that no subterfuge was here involved. National Bank is a separate corporation. It has held a national charter for many years and is to continue as the surviving bank. It serves a definite corporate purpose, separate and distinct from the holding company. First Bank Stock Corporation has existed as a separate corporation owning stock of national and other banks for a considerable period of time. In this respect, this case differs materially from Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., supra.

Plaintiff has failed to demonstrate that the court under the factual situation here presented committed error in determining that the corporate veil should not be pierced.

Courts must base their decisions upon existing law. If the public interest calls for further restrictions upon branch banking and bank holding companies expansion, the remedy lies in appropriate legislation.

As heretofore stated, we believe the trial court was correct in determining it lacked jurisdiction to hear and determine this case and that the judgment is entitled to be affirmed on that basis. We further hold that if jurisdiction in fact exists, the court properly determined that the case should be dismissed upon the merits.

The judgment appealed from is affirmed.