William E. NUESSE, Commissioner of Banks, State of Wisconsin, Appellant,

v.

William CAMP, Comptroller of the Currency et al., Appellees.

No. 20529.

United States Court of Appeals District of Columbia Circuit.

Argued March 17, 1967.

Decided Oct. 4, 1967.

Mr. Max O. Truitt, Jr., Washington, D. C., for appellant.

Mr. Norman Knopf, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and David L. Rose, Atty., Dept. of Justice, were on the brief, for appellee Camp. Miss Kathryn H. Baldwin, Atty., Dept. of Justice, also entered an appearance for appellee Camp.

Mr. William E. Rollow, Washington, D. C., entered an appearance for appellee Kenosha Nat. Bank.

Before BAZELON, Chief Judge, LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

In January of 1966, the American State Bank (American), a bank chartered by the State of Wisconsin, filed a complaint for declaratory and injunctive relief against the United States Comptroller of the Currency, alleging that the Comptroller was about to issue a certificate of approval of the application of the Kenosha National Bank for permission to open a branch in the vicinity of American's office. The gist of the complaint is that the source of the Comptroller's authority, the National Bank Act, 12 U.S.C. § 36(c) (1964), sanctions branching of national banks only "if such establishment and operation are at the time expressly authorized to state banks, by the law of the State in question," and that under Wis.Stat.Ann. § 221.04(1) (f) (1963), Wisconsin state banks are generally forbidden to branch.

The unopposed motion of the Kenosha National Bank (Kenosha) for leave to intervene as party defendant was granted in May of 1966. On July 18, 1966, appellant William E. Nuesse, as Commissioner of Banks of the State of Wisconsin (Commissioner), moved for leave to intervene under Rules 24(a) and (b), FED.R. CIV.P. as additional party plaintiff asserting that by virtue of Wis.Stat.Ann., §§ 220.02(3) and (4) (1963) he is charged with enforcing all state laws relating to banking, that plaintiff American was relying on a state statute under his jurisdiction, and that American's representation of his interest might be inadequate.

■ The Comptroller and Kenosha opposed intervention on the ground that the only issue of statutory construction properly involved related to the interpretation of federal laws. The contention is that § 36(h) of the National Bank Act, 12 U.S.C. § 36(h), defines "state banks" —for purposes of permitting national banks equal opportunity to branch under § 36(c)—as including "trust companies, savings banks, *or other* such corporations or *institutions carrying on the banking business* under the authority of State laws." (Emphasis added.) The laws of Wisconsin regulating savings and loan associations, administered by an official other than the appellant Commissioner, do permit savings and loan institutions to branch. See WIS.STAT.ANN. § 215.13 (39) (Supp.1966). The Comptroller takes the view that for purposes of the National Bank Act a Wisconsin savings and loan institution is a "state bank" authorized by state law to branch. The District Court shared the opinion that only the construction of a federal statute is at issue, and relying on Judge Kent's opinion in Merchants & Miners Bank v.

Saxon,[1] denied the motion to intervene. We think intervention should have been allowed as of right, and accordingly we reverse.[2] Alternatively, we think denial of permissive intervention was reversible error.

### 1. INTERVENTION AS OF RIGHT UNDER RULE 24(a)

As amended effective July 1, 1966, Rule 24(a) of the Federal Rules of Civil Procedure permits intervention as of right—

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We think appellant made sufficient showing of each of the three necessary requirements: (i) an interest in the transaction, (ii) which the applicant may be impeded in protecting because of the action, (iii) that is not adequately represented by others.

### A. Commissioner's Interest in the Subject Matter of the Action

An applicant for intervention must have an "interest" in the "transaction" which is the subject of the action. Contending that the Commissioner has no such interest as the Rule requires, the defendants rely on cases rejecting attempts by states and municipalities to intervene in lawsuits by virtue of their status as *parens patriae* in order to promote the general welfare of some of their citizens. Federal courts have frequently held that this type of concern does not rise to the stature of a definable legal right that constitutes a litigable "interest" in another's lawsuit,[3] although the cases are by no means uniform.[4] We need not wade into the general *parens patriae* fray, however, for we conclude that in this action the Commissioner has distinct legal rights of his own in his official station, rights more precise and definable than merely derivative interests arising because of his office as superintendent of the state's banking industry.

First we declare that a state banking commissioner does have suffi-

---

1. Civ. No. 1042 (W.D.Mich.1966).

2. The denial of a motion to intervene as of right is appealable. Brotherhood of Railroad Trainmen v. Baltimore & O. R. R., 331 U.S. 519, 524–525, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); 4 J.MOORE, FEDERAL PRACTICE ¶ 24.15 (1966).

3. See, *e. g.*, Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 315 F.2d 564, 566 (7th Cir.), cert. denied *sub nom.* Illinois v. Commonwealth Edison Co., 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64 (1963); Gross v. Missouri & A. Ry., 74 F.Supp. 242, 248–249 (W.D.Ark.1947). In one such case, then District Judge Wright denied the State of Minnesota's application to intervene as plaintiff in a suit brought by Minnesota milk manufacturers to have a Louisiana labeling statute declared unconstitutional. A Minnesota statute authorized its attorney general to oppose laws of other states which restricted sales of Minnesota milk. Judge Wright ruled that such a statute does not create standing to assert legal interests in federal courts, although he invited the state official to "participate ful-

ly at trial" and to examine and cross examine witnesses at the trial. Land O'Lakes Creameries, Inc. v. Louisiana State Board of Health, 160 F.Supp. 387 (E.D.La.1958). While such permission has been referred to as "closely resembling modern intervention," Note *Federal Intervention in Private Actions Involving the Public Interest*, 65 HARV.L.REV. 319, 320 (1951), an important difference exists when the technique is used at trial because it does not provide the intervenor's right of appeal.

4. The standing of the state as *parens patriae* to intervene in a lawsuit of direct significance to the general welfare of the populace has been recognized. See, *e. g.*, People of the State of California v. United States, 180 F.2d 596, rehearing denied 181 F.2d 598 (9th Cir.), cert. denied 340 U.S. 826, 71 S.Ct. 61, 95 L.Ed. 607 (1950), where California was held entitled to intervene to protect its policy that water rights be used for the public weal. The court reasoned that if a state may fashion such a statutory policy, it may appear in court to defend it.

cient standing to bring an action to enjoin the Comptroller from unlawfully authorizing a national bank to open a branch where state law would not permit branching by state banks. We have not previously decided this issue.[5] While another circuit has indicated that it would not permit a banking commissioner to make this claim, see South Dakota v. National Bank of South Dakota, 219 F.Supp. 842 (D.S.D.1963), aff'd 335 F.2d 444 (8th Cir. 1964), cert. denied 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965), we agree with the later opinion of Chief Judge Tuttle holding the contrary. See Jackson v. First National Bank of Valdosta, 349 F.2d 71 (5th Cir. 1965).

■ The question is whether the Commissioner has an "interest" in an action brought by the state bank for similar relief. We know of no concise yet comprehensive definition of what constitutes a litigable "interest" for purposes of standing and intervention under Rule 24 (a). One court has recently reverted to the narrow formulation that "interest" means "a specific legal or equitable interest in the chose". Toles v. United States, 371 F.2d 784 (10th Cir. 1967). We think a more instructive approach is to let our construction be guided by the policies behind the "interest" requirement. We know from the recent amendments to the civil rules that in the intervention area the "interest" test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process. Compare amended Rule 19 ("Joinder of Persons Needed for Just Adjudication"), and Rule 23 ("Class Actions"), and the Advisory Committee Notes, 39 F.R.D. 88–

94, 95–107. See also Atlantis Development Corp. v. United States, 379 F.2d 818, at 824 (5th Cir., June 12, 1967).

■ As we said in Textile Workers Union v. Allendale Co., 96 U.S.App.D.C. 401, 403, 226 F.2d 765, 767 (1955) (en banc), cert. denied sub nom. Allendale Co. v. Mitchell, 351 U.S. 909, 76 S.Ct. 699, 100 L.Ed. 1444 (1956) in permitting intervention: "[o]bviously tailored to fit ordinary civil litigation, these provisions [of Rule 24] require other than literal application in atypical cases. Administrative cases, as the present one demonstrates often vary from the norm." We should not be niggardly in gauging the interest of a state administrative officer in the validity of what his federal counterpart has done in an area of overlapping fact and intertwined law. We not only have the greater impetus to intervention that inheres in administrative cases, but in addition the "interest" of the state commissioner is underlined by the circumstance that the regulation of national banking is an area in which Congress, in the exercise of delegated federal power, has for various policy reasons decided to adopt and incorporate state law on issues of common concern. This admixture of national and state policies, attaching national legal force to the state policy, yields the corollary that a state official directly concerned in effectuating the state policy has an "interest" in a legal controversy involving the Comptroller which concerns the nature and protection of the state policy.

These considerations are fortified by the recent declaration that Congress through the National Bank Act "intended to place national and state banks on a basis of 'competitive equality' insofar as

5. In Whitney Nat'l Bank v. Bank of New Orleans and Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963), rev'd on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), we held that a state bank has standing to raise such a claim, and found it unnecessary to pass on the standing of a state banking commissioner who had intervened in the District Court. See 116 U.S.App.D.C. at 295, 323 F.2d at 300. In a similar case, where Judge

Wortendyke concluded that a state bank could seek similar relief directly against the national bank without joining the Comptroller as a defendant, the national bank did not contend that the state banking commissioner in a companion action against the same national bank lacked the requisite interest to sue, and this issue was not discussed. See Suburban Trust Co. v. National Bank of Westfield, 211 F.Supp. 694, 699–700 (D.N.J.1962).

branch banking was concerned." First Nat'l Bank of Logan v. Walker Bank & Trust Co., 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). The technique Congress has used to guarantee this competitive equality and identity of opportunity between state and national banks is the adoption of state rules on branching.[6] In the *Walker Bank* case, the Supreme Court expressly held that state law controls on all questions of branching by a national bank, not only "when" and "where" a bank may branch, but also by what "method".

In refusing the application for intervention, the District Court accepted the arguments of the Comptroller and the intervening national bank that the only issue involved in the pending action is the construction of the definitional section of the National Bank Act. If section 36(h) is so construed that a branchable Wisconsin savings and loan association is an "institution" "carrying on the banking business," the Comptroller would apparently prevail on the merits. To agree that the ultimate question is the meaning of a federal statute, however, does not mean that the state banking commissioner has no "interest" in how that question is answered. For on this interpretation rests a large part of the advancement of the Congressional policy of competitive equality between state and national banks. Where Congress has been most deliberate in promoting a policy of equal opportunity by adopting state law on the subject, we think the courts may not be insensitive to the request by the official charged with administering the state's banking laws to appear as a party to urge the construction of the federal statute that he claims is necessary to secure the state's interests, and hence the congressional objectives.

The Supreme Court's most recent expression of intervention policy appears in Cascade Natural Gas Corp. v. El Paso

National Gas Co., 386 U.S. 129, 135, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), reversing United States v. El Paso National Gas Co., 37 F.R.D. 330 (D.Utah 1965). The Court ruled that the State of California was entitled to intervene as of right in proceedings on remand when "protection of California interests in a competitive system was at the heart of our mandate directing divestiture." We hold that where protection of the competitive equality of state banks is the core of the federal statute controlling the branching of national banks, a state banking commissioner has an adequate interest in the construction of the federal act to justify intervention.

B. *The Impairment of the Commissioner's Interest as a Practical Matter*

Prior to the 1966 amendment of Rule 24, the Commissioner would probably not have been entitled to intervene in this action, for the pre-amendment Rule required that the applicant might be "bound" by the judgment in the pending action and the prevailing weight of authority interpreted this test to mean bound in the res judicata sense. See, *e. g.,* Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). The changes wrought in Rule 24(a) have repudiated that narrow approach in general, and *Sam Fox* in particular. The Rule now specifies only that the "disposition of the action may as a practical matter impair or impede his ability to protect" the applicant's interest. This alteration is obviously designed to liberalize the right to intervene in federal actions. Interestingly, an earlier draft would have required that the judgment "substantially" impair or impede the interest, but that higher barrier was deleted in the course of approving the amendment. See Cohn, The New Federal Rules of Civil Procedure, 54 GEO.L.J. 1204, 1232 (1966).

---

6. See Commercial State Bank of Roseville v. Gidney, 174 F.Supp. 770 (D.D.C. 1959), aff'd on opinion below, Gidney v. Commercial State Bank of Roseville, 108 U.S.App.D.C. 37, 278 F.2d 871 (1960), in which we approved Judge Youngdahl's conclusion that state banks had standing to sue the Comptroller.

We think that under this new test *stare decisis* principles may in some cases supply the practical disadvantage that warrants intervention as of right. We join, therefore, in the analysis recently presented by Judge Brown in Atlantis Development Corp. v. United States, *supra*, 379 F.2d 818, at 826–829.

We need not and do not consider how far this doctrine rightly extends. In the case at bar, a question of first impression is being presented that will involve a decision whether terms in the National Bank Act mean that the Comptroller of the Currency may authorize a national bank (not a federal savings and loan association) to branch where the laws of the State of Wisconsin would not permit a state bank to branch (although they would permit a state savings and loan to do so). The Commissioner would not be precluded by res judicata from relitigating this question if an unfavorable answer is rendered in his absence. But even under the former rule, the opportunity to raise the same issue in another forum was no bar to intervention as of right,[7] and we may expect that a decision by the District Court here, the first judicial treatment of this question, would receive great weight, whether the question arose again in this jurisdiction or in the federal court in Wisconsin. Should this court on appeal render a decision in the Commissioner's absence, and contrary to his view, he would presumably be hampered in seeking to vindicate his approach in another court. He might retain the hope of sparking a conflict between circuits, and possibly even Supreme Court resolution. At least in part, it is this fragmented approach to adjudication that the revitalized federal rules seek to avoid. In fairness to their spirit, we think we must recognize the practical consequences of the "failure to allow [the Commissioner] an opportunity to advance [his] own theories both of law and fact in the trial (and appeal) of the pending case." Atlantis Development Corp. v. United States, *supra*, 379 F.2d 818, at 828–829.[8] And in this context it is significant that the District Court denied a motion for summary judgment on the merits of this case, on the ground that even though the issue is one of statutory construction, and thus one of "law", the nature of the dispute is such that evidence might be helpful in arriving at an interpretation.

### C. Representation of the Commissioner's Interest May Not Be Adequate

The Commissioner's right to intervene as a party depends also on whether his interest is adequately represented by existing parties. See generally Annot., 84 A.L.R.2d 1412 (1962). The prior text of Rule 24 spoke in terms of whether representation by existing parties "is or may be inadequate". The present rule provides for intervention "unless the applicant's interest is adequately represented by existing parties."

While the change in wording does not relate to any change in standard as such, it underscores both the burden on those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention.

Little guidance for the present case is furnished by the discussion in the pre-amendment cases which focused on such indicia of inadequacy as collusion between the parties, a conflict in position urged, or an indication that the alleged

7. Clark v. Sandusky, 205 F.2d 915, 919 (7th Cir. 1953).

8. In Mitchell v. Singstad, 23 F.R.D. 62 (D.Md.1959), Judge Thomsen allowed intervention by a state road commissioner in a Fair Labor Standards Act proceeding between the U.S. Secretary of Labor and road engineers under contract to the state. Even in the absence of any contention that the state would be liable over for additional wages, Judge Thomsen reasoned that a finding that such work was covered by the federal act would affect the state's road construction projects in the future by increasing costs.

representative would fail in his duty to prosecute the action diligently.[9] These factors have their most common and appropriate application in class actions, where the applicant's interest is identical to that of an existing party. Even under the amended rule the mere fact that there is a slight difference in interests between the applicant and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome. "Interests may be different without being adverse." Peterson v. United States, 41 F.R.D. 131, 134 (D.Minn.1966). However, interests need not be wholly "adverse" before there is a basis for concluding that existing representation of a "different" interest may be inadequate. Compare Kozak v. Wells, 278 F.2d 104, 109–110, 84 A.L.R. 2d 1400 (8th Cir. 1960).

▪ The present suit is not a class action. American brought this action to ·protect its own individual position, alleging that unlawful authorization to Kenosha "will cause great and irreparable damage to the banking business of said plaintiff." The Commissioner's proposed complaint invokes the same legal theory as the state bank but his interest is different, for, he alleges—

> the establishment and operation of branch banking under 12 U.S.C. Sec 36 (c) is of great public interest to the citizens of this state and if allowed to the national banks while being denied to the state banks, would result in the state banks being in an unfair competitive position to their great and irreparable damage.

The interest that the state bank is suing to protect is its own commercial integrity, while the interest sought to be promoted by the Commissioner is the "competitive equality" of national and state banks in general. The state bank would presumably be content with preventing Kenosha from opening a branch by whatever technique possible. It might conceivably be interested in a future settlement that would soften the impact on its private interest. The Commissioner, with his general interest, seeks an adjudication that the National Bank Act does not permit any national banks to branch in Wisconsin because the institutions the state defines as "banks" are not allowed to branch. Their interests may not coincide.

The tactical similarity of the present legal contentions of the state bank and the state commissioner does not assure adequacy of representation or necessarily preclude the Commissioner from the opportunity to appear in his own behalf. Textile Workers Union v. Allendale Co., *supra*, 96 U.S.App.D.C. at 404, 226 F.2d at 768. We reiterate that this is an area where Congress has in general been deferential to state interests and the maintenance of a competitive position between state and national banks. The state commissioner is "particularly well situated to represent interests adverse to those of a national bank which, even with the approval of the Comptroller of the Currency, would naturally be inclined to push the restrictions of § 36(c) to, or, if possible, beyond, their proper limits." Jackson v. First National Bank of Valdosta, *supra*, 349 F.2d at 75. (Footnote omitted). And the District Judge who denied appellee's motion for summary judgment explained:

> While, ordinarily, questions of statutory construction are questions of law, nevertheless, when the Court is called upon to construe the meaning of a term that is not a word of art and that does not have a recognized common-law meaning, the Court may well be aided by testimony as to what is generally regarded as the construction of the term in the community in which that

9. See, *e. g.*, Stadin v. Union Elec. Co., 309 F.2d 912, 919 (8th Cir. 1962), cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247, 249 (9th Cir. 1955); Philadelphia Elec. Co. v. Westinghouse Elec. Corp., 308 F.2d 856, 859 (3d Cir. 1962), cert. denied *sub nom.* Pennsylvania Pub. Util. Comm'n v. Westinghouse Elec. Corp., 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963).

term is used, its relation to other cognate terms and many other similar matters that may well be conceived.

In adducing evidence on this issue, the state banking commissioner may be in a better position than a single state bank to provide full ventilation of the legal and factual context of this critical definition.

 We hold that there is a serious possibility that the Commissioner's interest may not be adequately represented by any existing party, and that he is entitled to participate as a party and not merely as a friend of court.[10]

Since the Commissioner met all three criteria for intervention as of right under Rule 24(a), it was error to deny him that right.

## II. PERMISSIVE INTERVENTION

 We think the District Court should have granted the alternative motion seeking permissive intervention under Rule 24(b). While reversal of the denial of permissive intervention is not often warranted, there is undoubted jurisdiction to enter such an order where the District Court has not followed the appropriate standard or approach in exercising its discretion. See Textile Workers Union v. Allendale Co., *supra*,

96 U.S.App.D.C. at 405–06, 226 F.2d at 769–70.

 Rule 24(b), not amended in 1966, provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact. In the present case the legal issues are the same. Although the rule speaks in terms of a "claim or defense" this is not interpreted strictly so as to preclude permissive intervention. In Professor Moore's phrase, quoted with approval in *Allendale*, intervention has been allowed in situations where "the existence of any nominate 'claim' or 'defense' is difficult to find."[11] While permissive intervention may be denied in order to avoid the likelihood of undue delay, here the District Court's denial of intervention was not put on that ground;[12] it is not seriously argued by appellees[13] and the factual situation does not support it.

 It is a significant fact that the applicant for permissive intervention is a government official. Rule 24(b) was expressly amended in 1946 so as to permit intervention by a state or federal governmental official charged with administering a state statute or regulation on which any party relies for his claim or defense.[14] The amendment was added to

10. The applicant is often relegated to the status of *amicus curiae* when intervention is properly denied. See, *e. g.*, Durkin v. Pet Milk Co., 14 F.R.D. 374, 381 (W.D. Ark.1953). But this is not an adequate substitute for participation as a party. Although specific provision may be made for full participation at the trial (see note 3), generally, as has been elsewhere noted, an amicus "may not tender any evidence, make any motions, or take or prosecute an appeal." Holtzoff, *Entry of Additional Parties in a Civil Action*, 31 F.R.D. 101, 102; *cf.* Justice v. United States, 365 F.2d 312, 314 (6th Cir. 1966).

Of course, even where the interests of a person may have been adequately represented at trial, failure to take an appeal from an adverse judgment may introduce the element of inadequacy, entitling the interested person to intervene after judgment to file an appeal. Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505,

cert. denied 329 U.S. 724, 65 S.Ct. 190, 89 L.Ed. 621 (1944); Zuber v. Allen, No. 20,931 (D.C.Cir. July 5, 1967).

11. 4 J. MOORE, *supra* note 2, ¶ 24.10, at 60.

12. The District Court denied intervention on the ground that the "governing rule" was that stated by Judge Kent in Merchants & Miners Bank v. Saxon, cited note 1, a decision denying intervention solely for lack of interest.

13. Appellees only quote the general consideration that "additional parties always take additional time." See Stadin v. Union Elec. Co., 309 F.2d 912, 920 (8th Cir. 1962), cert. denied 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963).

14. The second sentence of Rule 24(b) now provides: "When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation,

avoid "exclusionary constructions" where public officials seek permission to intervene,[15] and "the amendment in effect expands the concept of 'claim or defense' insofar as intervention by a governmental officer or agency is concerned."[16] It is perhaps more accurate to say that it considers the governmental application with a fresh and more hospitable approach.

Apparently the District Court concluded that the 1946 amendment did not go far enough to help appellant. In denying intervention, the District Court stated that the governing rule is that stated by District Judge Kent (*supra* note 1), who denied permission to a state commissioner to intervene in an action *inter alia* to enjoin a national bank from branching, though he specifically recognized that the intervention would involve no additional delay or cost, because "we are unable to ascertain any appropriate interest in the petitioner." He concluded amended Rule 24(b) was inapplicable on the ground that what was involved in the main litigation was not an interpretation of a state act being administered by the Comptroller. We disagree with this precedent for two reasons: Its interpretation of amended Rule 24(b) was excessively narrow, and it reflects an underlying but we think erroneous premise that on a governmental official's application for permissive intervention the only "interest" is the interest expressly referred to in the wording of Rule 24(b) as amended.

The contention that what plaintiff relied on is not a state statute but only the definitional section of the National Bank Act ignores the fundamental significance of the "intimacy of the relationship between and interdependency of the Federal and State statutes" in the banking field. Suburban Trust Co. v. National Bank of Westfield, 211 F.Supp. 694, 697 (D.N.J.1962). Even though § 36(h) of the National Bank Act is not an adoption of state law like § 36(c), it is part of a federal statute that reflects a pervasive policy of coordination. It would be unsound to assert that the proper interpretation of § 36(h) is independent of state policy and legislation. It is relevant at least to consider the construction put by the community on such terms as "banking business," as the District Court pointed out in denying summary judgment, and as the Comptroller himself apparently recognized. In any realistic appraisal of the issues, the statutes and regulations administered by the state commissioner are "relied on" by the plaintiff, even though the reliance may be indirect and one step removed from the federal standard that ultimately governs the case.

Moreover, we are of the view that Rule 24 is part of an evolving jurisprudence. Even prior to the 1946 amendment, SEC v. United States Realty & Improvement Corp., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), stressed that intervention to promote a relevant public interest is permissible when the public official charged with primary responsibility for vindicating that interest seeks to defend it. There the Court approved intervention by the SEC to ensure that a proposed reorganization was carried out under a statute providing for SEC scrutiny. Writing for the Court, Justice Stone stated that "the Commission has a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it through intervention to prevent reorganizations, which should rightly be subjected to its scrutiny, from proceeding without it." 310 U.S. at 460, 60 S.Ct. at 1055.

Underlying this decision is a broad concern that courts should mold

---

order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action."

15. 4 J. MOORE, *supra* note 2, ¶ 24.10 [5] (1966). See Guaranty Trust Co. v. West

Virginia Turnpike Comm., 109 F.Supp. 286, 294 (S.D.W.Va.1952).

16. 4 J. MOORE, *supra* note 2, ¶ 24.10, at 65.

their traditional methods in order to advance the "public interest," a concern that Justice Stone, teacher and lifetime student of Equity, voiced and implemented in other historic decisions of the Supreme Court. *E. g.* Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937); United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 83 L.Ed. 1211 (1939). A kindred concern provided the impetus to the 1946 amendment, and clarified for the stragglers the leading edge of the doctrine of United States Realty. Rules adopted to bring the courts in line with an evolving jurisprudence are not properly read so as to freeze the pattern of decisions and preclude any further evolution. As we noted in connection with another rule, see Smith v. Katzenbach, 122 U.S.App.D.C. 113, 117, 351 F.2d 810, 814 (1965):

> That Rule is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule.[17]

It is a living tenet of our society and not mere rhetoric that a public office is a public trust. While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation. Notwithstanding this public interest the official may be denied intervention in the exercise of a sound judicial discretion finding that intervention would unduly expand the controversy or otherwise lead to improvident delay or expense. No such exercise of discretion was involved here. Intervention was denied, on the authority of Judge Kent's ruling, solely because of lack of appropriate interest. That was error.

Reversed.

17. A similar approach was used by Judge Thomsen in allowing intervention by a state official in Mitchell v. Singstad, 23 F.R.D. 62 (D.Md.1959).