**HAZELTINE CORPORATION,**
**Plaintiff,**

**v.**

**The Honorable Claude S. BRINEGAR**
**et al., Defendants.**

**Civ. A. No. 75–0114.**

United States District Court,
District of Columbia.

Feb. 21, 1975.

Robert H. Turtle, James M. McHale, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, Robert M. Werdig, Asst. U. S. Attys., Washington, D. C., for defendants.

Alan Y. Cole, Walter H. Fleischer and Everett F. Kahn, Washington, D. C., for intervenor-defendant Bendix Corp.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

### Background

In 1971 the United States government embarked upon a development program for a landing system for airplanes intended to meet a combination of military and civil requirements. The program, to be completed within a five-year span, is designed to produce a microwave landing system which meets or exceeds a series of operational requirements and which may gain worldwide acceptance. The five-year period for completion of the development is especially important since the countries represented in the International Civil Aviation Organization (ICAO) will meet in June 1976 for the purpose of accepting a single non-visual landing system for international use. Before that time, the United States must have a working prototype system, supported by full documentation, in place for demonstration in competition with other techniques developed by other ICAO countries.

In support of this objective, the Federal Aviation Administration (FAA) in 1971 solicited proposals from industry for a three phase microwave landing system program. The program's purpose is the development of a total microwave landing system (MLS). This contemplates a ground station generating electromagnetic signals with responsive units in the airplane to receive these signals and provide information to the pilot which defines his position with respect to the runway in terms of horizontal angle, height and distance.

Nine proposals were received which, after technical evaluation and source selection analysis, were reduced to six. Contracts directed to Phase I "Technique Analysis and Contract Definition" were extended to and accepted by all six contractors.

Upon completion of Phase I, two microwave landing system techniques were selected by FAA for consideration. These were generally identified as Doppler and Scanning Beam. Hazeltine, ITT-Gilfillan, Bendix Corp. and Texas Instruments were engaged to carry out research and development. The first two firms chose to work on the Doppler technique, and the last two chose to develop the Scanning Beam technique.

Initially, the Scanning Beam contractors employed frequency reference coding on the Scanning Beam. This was later abandoned for a time reference signal format. This alternate format was deemed more promising after the United States learned of the investigations in Australia directed to a scanning beam technique employing time reference encoding.

### Findings of Fact

Apparently all four contractors carried out their assignments competently and the government received the technical information and supporting documentation needed to make a selection of a single optimized technique, either Doppler, or Scanning Beam with time reference, as the candidate for United States military/civil use and international adoption.

In moving toward final selection, the FAA set up a technique assessment process which went far beyond the usual governmental review and recommendation procedure. A Central Assessment Group (CAG) was created which included experts from the United States and foreign governments, airplane manufacturers, airline pilots, airport operators and academic scientists. This Group made a careful study of relevant features of both techniques in their optimized forms and concluded that both met the operational requirements specified.

The CAG was then faced with examining the differences between two generally satisfactory systems and assessing which of the two it would recommend

for adoption. An elaborate assessment process which considered both technical and economic factors was developed and carried out. When the members of the CAG Steering Committee voted on their choices, Scanning Beam was preferred over Doppler 9 to 6 with 2 abstentions. The abstainers stated that either one would be satisfactory. This careful and open process of determining which optimized technique merits further support is certainly rational and would appear to limit further federal support to the two contractors, Bendix and Texas Instruments, which had been engaged in developing scanning beam systems.

Hazeltine protests that the tentative selection of an optimized scanning beam technique should not foreclose it from competing in that technique for Phase III work. Hazeltine argues that technology it developed for the government under a Phase II contract constitutes a valuable segment of the *optimized* scanning beam technique. In particular, Hazeltine has developed a Doppler scan electronic antenna which may be converted to fit the requirements of the optimized scanning beam system. (Both systems, Doppler and Scanning Beam, have benefited by input from a number of foreign and domestic sources of technological competence.) Therefore, plaintiff claims that it has earned the right to compete on equal terms with Bendix and Texas Instruments for the third and final phase of the development.

Plaintiff Hazeltine seeks an injunction to

(1) Prevent FAA from continuing to brief Bendix and Texas Instruments with further scanning beam information unless Hazeltine is allowed to participate in the briefing;

(2) Prevent defendants from entering into contracts unless plaintiff is given opportunity to participate in a new contract award; and

(3) Continue aforesaid injunctions if the Comptroller General of GAO decides plaintiff's protest adversely to plaintiff.

Plaintiff further seeks a Declaratory Judgment granting plaintiff opportunity to participate in Phase III program as a prime contractor on the Scanning Beam with time reference technique.

Bendix and Texas Instruments have filed for leave to intervene as defendants.

### Conclusions of Law

1. The Court finds that the original procurement was competitive; that it was a package of three phases which started with nine contractors, was reduced to six for Phase I, to four for Phase II, and to two for Phase III; that it was always contemplated that a single, most effective technique would go forward by the contractors associated with the selected technique.

2. The Court grants Bendix Corporation's and Texas Instruments' motions to intervene. *Nuesse v. Camp,* 128 U.S.App.D.C. 172, 385 F.2d 694, 702–04 (D.C.Cir. 1967); *Scanwell Laboratories v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

3. The Court denies plaintiff's motion for a preliminary injunction and declaratory judgment. *Virginia Petroleum Jobbers v. Federal Power Commission,* 104 U.S.App.D.C. 106, 259 F.2d 921 (Cir.1958).

The Court finds that the public interest is best served by expeditiously permitting the FAA to proceed forthwith with its final selection of technique, and thereafter in Phase III, contract with whichever contractors are associated with the selected technique. Hazeltine is associated with the Doppler technique. If the Doppler technique is chosen, the contractors would be Hazeltine and ITT. If the Scanning Beam with Time Reference System format is selected, the contractors would be Bendix and Texas Instruments. *Kentron-Hawaii Ltd. v. Warner,* 156 U.S.App. D.C. 274, 480 F.2d 1166, 1169, 1182 (1973); *Steinthal* v. *Seamans,* 147 U. S.App.D.C. 221, 455 F.2d 1289, 1301 (1971); *Wheelabrator Corp. v. Chafee,*

147 U.S.App.D.C. 238, 455 F.2d 1306, 1313–17 (1971).

5. Plaintiffs have raised questions relative to alleged violations in the government's permitting all contracts to expire and alleged irregularities in their subsequent extension. The Court declines to consider the merits of these allegations since the activity occurred subsequent to the filing of this case. Plaintiff's allegations may properly be pursued before the General Accounting Office as plaintiff has done in the past.