**In re FIRST DATABANK ANTITRUST LITIGATION.**

**This Document Relates to: All Actions.**

**No. 1:01CV00870.**

United States District Court, District of Columbia.

Feb. 14, 2002.

Matthew F. Pawa, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, William A. Isaacson, Boies & Schiller, L.L.P., Washington, DC, Alan H. Rolnick, Hanzman & Criden, P.A., Coral Gables, FL, for plaintiffs.

Kenneth Anthony Gallo, Leiv Blad, Clifford, Chance, Rogers & Wells, LLP, Washington, DC, Melvin Howard Orlans, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

In accordance with the proceedings in open court of February 6, 2002, this Court will grant the motions for final approval of settlement between the two class plaintiffs and defendants and enter final judgment against the defendants. The Court will also grant the motion to intervene by the Federal Trade Commission ("FTC") for the limited purpose of opposing the accompanying fee petition filed by class counsel for the Direct Purchaser Settlement Class.

### I.

On April 20, 2001, the first of eight private antitrust actions was filed against defendants Hearst Trust and Hearst Corporation (collectively "Hearst"), and First DataBank, Inc, a subsidiary of Hearst, alleging that First DataBank's acquisition of Medi–Span, Inc., its principal competitor in the drug information database market, allowed defendants to illegally monopolize and increase prices in the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. The Court has since consolidated the eight private actions for pretrial purposes pursuant to Fed. R.Civ.P. 42(a), and on August 22, 2001, conditionally certified the direct and indirect pur-

chaser settlement classes and preliminarily approved the proposed settlements between the plaintiff classes and the defendants.

The proposed settlement between the Direct Purchaser Settlement Class and defendants provides that the defendants will make a settlement payment (the "Direct Purchaser Settlement Payment") of $23.25 million plus interest from June 1, 2001, to the members of the Direct Purchaser Settlement Class,[1] in exchange for which, the members of the class will release all claims against defendants related to the conduct alleged in these actions. The Direct Purchaser Settlement Payment is to be distributed to members of the Direct Purchaser Settlement Class after approval by the Court and in accordance with the "Amended Allocation and Distribution Plan Re: Direct Purchaser Settlement" filed on November 28, 2001. The plan generally provides that a "Settling Class Member" who files a claim form on or before October 26, 2001, will be eligible to receive payment equal to the difference between the amount the Settling Class Member actually paid for defendants' drug information database products and the price such member would have paid in 1997 prior to First DataBank's purchase of Medi–Span in January of 1998.

The proposed settlement between the Indirect Purchasers Settlement Class and the defendants provides that the defendants will make a settlement payment (the "Indirect Purchaser Settlement Payment") of $2.75 million plus interest from June 1, 2001, to the members of the Indirect Purchaser Settlement Class,[2] in exchange for which, the members of the Indirect Purchasers Settlement Class will release all claims against defendants related to the conduct alleged in these actions. The Indirect Purchaser Settlement Payment will be distributed to members of the Indirect Purchaser Settlement Class af-

ter approval by the Court and in accordance with the "Amended Allocation and Distribution Plan Re: Indirect Purchaser Settlement" filed on November 28, 2001. The plan generally provides that a "Settling Class Member" who files a claim form on or before October 26, 2001, will be eligible to receive payment equal to certain "overcharges" per applicable calendar year when the member purchased defendants' drug information database products. The overcharges represent the difference between what First DataBank was able to charge for its products after its purchaser of Medi–Span in January of 1998 and what the competitive market rate would have allowed First DataBank to charge absent the acquisition.

Under both proposed agreements, defendants are ultimately required to sell assets formerly owned by First DataBank in order to create a business entity capable of offering a full line of drug data files and possessing some associated assets, as approved by the FTC. Defendant Hearst has paid the costs for providing notice to members of the Direct and Indirect Purchaser Settlement Classes and the costs associated with retaining a Settlement Administrator to administer the Direct and Indirect Purchaser Settlement Class Agreements. Approval of the proposed settlement agreements is not contingent upon the Court's consideration of class counsels' fee petitions.

Consistent with the requirements under the preliminary approval orders, plaintiffs' co-lead counsel effected notice of the proposed settlements with the members of the Direct Purchaser and Indirect Settlement Classes by publication in three widely-read national publications [3] over a period of three weeks beginning on September 10, 2001, and a fourth [4] published twice during the month of October, 2001, with each such publication

1. On August 13, 2001, the Direct Purchaser Settlement Payment was deposited into the "Direct Purchaser Settlement Account" along with $279,000 in interest. As of January 8, 2002, the balance in the settlement account was $24,638,561.

2. On August 13, 2001, the Indirect Settlement Payment was deposited into the "Indirect Purchaser Settlement Account" along with $33,000 in interest. As of December 1, 2001, the balance

in the settlement account was approximately $2,953,401.

3. The three publications included **The Pick Sheet—FDC Reports, Modern Healthcare,** and **Pharmacy Week.**

4. The fourth publication was **The Pharmaceutical Representative.**

notice referring to the more comprehensive notice and proof of claim forms posted on Class Counsels' Internet web sites. In addition, the Settlement Administrator obtained from the defendants a comprehensive listing of all members of the Direct Purchaser Settlement Class (7,405 customer names and addresses) and mailed notice and proof of claim forms to them as of September 7, 2001. Because defendants did not have any contact information with regard to the members of the Indirect Purchasers Settlement Class, notice was provided exclusively by the publication program.

## II.

As an initial matter, the Court finds that the Direct and Indirect Purchaser Settlement Classes continue to meet the requirements for class certification under Rule 23(b)(3). Namely, both groups of plaintiffs have established the four prerequisites to class certification[5] and the additional requirements required under Rule 23(b)(3) of predomination and of superiority of the class action over other methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23. Therefore, class certification for both the Direct and Indirect Settlement Classes remains appropriate for purposes of considering approval of the proposed settlements.

In considering the proposed class settlements, Rule 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." *See* Fed.R.Civ.P. 23(e). While approval of class settlements lies within the discretion of this Court, *see United States v. District of Columbia,* 933 F.Supp. 42, 47 (D.D.C.1996), this discretion is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases. *See Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999). "In determining whether a settlement should be approved, the court must decide whether it is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." Manual for Complex Litigation (Third), § 30.42 (1997). Its primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case, *Thomas v. Albright,* 139 F.3d 227, 231 (D.C.Cir.1998); however, other factors include whether the settlement is the result of arm's length good-faith negotiations by experienced counsel, the status of the litigation at the time of settlement, and the reaction of the class. *See In re Vitamins Antitrust Litig.,* No. 99–197, 2001 WL 856290, at \*1 (D.D.C. July 19, 2001).

The terms of the Direct Purchaser Settlement Agreement are very favorable for the members of the Direct Purchaser Settlement Class, particularly in light of the numerous uncertainties inherent to antitrust litigation in general and this case in particular according to class counsel. Under the terms of the settlement, defendants have deposited approximately $24 million in a settlement account for members of the Direct Purchaser Settlement Class, paid the costs of providing notice to class members, and are obligated to pay the cost of administering the settlement fund not to exceed $350,000. Plaintiffs' expert economist, Dr. Sattinger opines that the proposed settlement not only falls within the range of five standard damages calculation methodologies, but promises a substantial premium to the class over estimated single damages under three of the five models. Sattinger Aff. ¶ 20. This Court has previously recognized the appropriateness of approving class settlements involving recoveries for far less than the whole of estimated single damages suffered. *See e.g., Jack Faucett Associates v. Am. Tel. and Tel.,* 1985 WL 5199, at \*6 (D.D.C. Dec.16, 1985).

Plaintiffs' class counsel also candidly admit that despite their confidence in the merits of their case, the complexities and uncertainties of litigating this case favor settlement. Be-

---

5. These include (1) numerosity, (2) commonality of questions of fact and law, (3) that class plaintiffs' claims are typical of the claims of the class, and (4) that class plaintiffs will fairly and adequately represent the interest of the class. *See* Fed.R.Civ.P. 23(a).

cause this case does not involve criminal indictments or allegations of a horizontal conspiracy, class plaintiffs' counsel believe that defendants would have contested liability under a rule of reason, and challenged causation, impact, and plaintiffs' measure of damages. With respect to liability alone, class counsel assumes that defendants would have forced plaintiffs to prove, *inter alia*, that (1) competition existed between First DataBank and Medi–Span before the acquisition, (2) the alleged price increases were caused by the merger rather than a change to a per-user fee system adopted in 1998, (3) defendants obtained monopoly power and used that power to illegally restrain trade, (4) defendants acted willfully to obtain monopoly power in the relevant market, and (5) defendants' monopoly was continuing and thus entitled plaintiffs to injunctive relief. Absent settlement, class counsel claim that it is likely that plaintiffs would not have received the favorable recovery currently being offered in the proposed settlement. The fact that the settlement will provide full recovery for the plaintiffs without requiring them to risk the costly and unpredictable outcome of litigation weighs heavily in favor of its being approved.

The remaining factors also support approval of the proposed settlement. First, the Direct Purchaser Settlement Class Counsel have documented their past experience and success in complex litigation matters, and they are without doubt "among the most experienced antitrust litigators in the country." *See* Joint Dec. Class Pls' Co-lead Counsel in Sup. of Final Settlement Approval, Ex. A at 9. Second, there is no reason to question their assertion that the settlement agreement is anything but the product of extensive arm's-length negotiations (four months' worth) undertaken in good faith after substantial factual investigation and legal analysis. Whereas four months may seem like a relatively short period of time for discovery for such complex antitrust litigation, class counsel had the benefit of the FTC's investigation which probably allowed them to narrow their focus in discovery to that additional information of particular interest to the Direct Purchaser Settlement Class. Third, the proposed settlement is being considered at an appropriate time since

the parties have engaged in and completed discovery and assessed their cases and the merits and risks of litigation. Finally, none of the members of the class objects to the proposed settlement, and only 2 of over 6000 estimated members have decided to opt out of the proposed settlement. Overall, in light of the deference extended to parties wishing to settle and the above analysis of the factors to be considered when contemplating approval, the Court will grant final approval of the proposed settlement between the Direct Purchasers Settlement Class and defendants.

The terms of the Indirect Purchaser Settlement Class Agreement are also quite favorable for its members in light of the uncertainty of recovery were the case to go to trial. Under the terms of the settlement, defendants have deposited approximately $2.9 million in a settlement account for members of the Indirect Purchaser Settlement Class, paid the costs of providing notice to class members, and are obligated to pay the reasonable costs to retain a Settlement Administrator to administer the settlement fund. Dr. Sattinger opines that the proposed settlement allows for the recovery of significant damages by the class members, exceeding single damages under one of five damages calculation models. Sattinger Aff. ¶ 19. Once again, courts have approved class settlements involving recoveries for far less than the recovery provided in this proposed settlement. *See Jack Faucett*, 1985 WL 5199, at *6.

The Indirect Purchaser Settlement Class Counsel also state that despite their confidence in the merits of their case, the complexities and uncertainties of litigating this case favor approval of the proposed settlement. Consistent with the position of class counsel for the Direct Purchaser Settlement Class, class counsel for the Indirect Purchaser Settlement Class assert that defendants would have contested liability under a rule of reason, and challenged causation, impact, and plaintiffs' measure of damages. Class counsel further acknowledge the uncertainty as to whether they could prove, *inter alia*, the existence of a monopoly, the relevant product and geographic markets, and the harmful impact. Because the proposed

settlement provides significant recovery for the plaintiffs without requiring them to risk the costly and unpredictable outcome of litigation, the Court believes approval of the proposed settlement is warranted.

For substantially the same reasons provided above concerning the Direct Purchaser Class Settlement, the majority of the remaining factors also support approval of the Indirect Purchaser Class settlement. There is no reason to question class counsel's assertion that the proposed settlement agreement is the product of the same extensive arm's-length negotiations after substantial factual investigation and legal analysis as that undertaken by the Direct Purchaser Settlement Class Counsel. Similarly, the proposed settlement is being considered at an appropriate time since the parties have engaged in and completed discovery and assessed their cases and the merits and risks of litigation. None of the members of the class objects to the proposed settlement nor have any opted out. Overall, the majority of the relevant factors favor approval of the proposed settlement. Accordingly, the Court will grant final approval of the proposed settlement between the Indirect Purchaser Settlement Class and defendants.

## III.

Having concluded that the proposed settlement agreements are fair, reasonable, and adequate under the circumstances, the Court now turns its attention to the FTC's motion to intervene for the limited purpose of opposing the fee petition filed by class counsel for the Direct Purchaser Settlement Class. Prior to addressing the merits of the FTC's motion, a short summary of additional facts relevant to the motion is warranted.

On April 5, 2001, prior to the filing of any of the now-consolidated private actions, the FTC brought a separate suit (C.A. No. 01–0734) against defendants Hearst and First DataBank, alleging that First DataBank's acquisition of Medi–Span resulted in an illegal restraint of trade in violation of Sections 7 and 7A of the Clayton Act, 15 U.S.C. §§ 18

and 18a and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

On April 13, 2001, after substantial negotiations had taken place and a week prior to the filing of the first private action, the defendants informed the FTC that they were willing to settle the FTC's suit for a total of $18 million, including a $16 million disgorgement of profits resulting from defendants' monopolistic practices. While both parties agreed to $16 million in disgorgement at that time, no formal stipulation was signed because the parties were still negotiating the amount of civil penalties to be paid by defendants and the date and nature of the divestiture of Medi–Span.[6] In anticipation of private class actions to follow, however, the FTC did make it clear at the time that it would permit any disgorgement from defendants as part of a settlement in that case to be subsumed into any private class action settlement as long as the FTC found the distribution plan acceptable and none of the disgorgement funds would be used to pay attorneys' fees.

On December 18, 2001, the Court approved a settlement agreement between the FTC and defendants in C.A. 01–0734 that included a $19 million disgorgement by defendants. The FTC asserts that this amount approximately represents the amount the parties preliminarily agreed upon in April of 2001— $16 million plus $1 million per month since September 1, 2001.

The Direct Purchaser Settlement Agreement provides that the Settlement Administrator shall pay court-approved attorneys' fees, litigation expenses, expert fees, applicable taxes, and other amounts ordered by the Court from the settlement account. Class counsel for the Direct Purchaser Settlement Class have filed a fee petition, requesting that the Court award them attorneys' fees in an amount equal to approximately 22% of the Direct Settlement Payment or $5,115,000, including interest, their expenses of $52,911.87, and outstanding fees and expenses of their experts of $53,884.74.

---

6. The FTC also apparently represented to the defendants that it would require an increase in the total disgorgement amount of $1 million per month for every month after September 1, 2001, that divestiture did not take place.

On January 2, 2002, the FTC filed a motion requesting leave to intervene pursuant to Fed.R.Civ.P. 24(b) for the limited purpose of opposing the fee petition filed by class counsel for the Direct Purchaser Settlement Class.[7]

> In relevant part, Rule 24(b)(2)[8] provides: Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). The grant of a Rule 24(b) motion is left to the sound discretion of the district court. *See Humane Soc'y of the United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C.1985).

As an initial matter, the FTC has applied for intervention in a timely manner and there is little to no evidence to suggest that the FTC's intervention for the limited purpose of opposing plaintiffs' fee petition will unduly delay or prejudice the plaintiffs' case. The FTC filed its motion for intervention just seven days after class counsel's fee petition was filed. The Court has already determined that the entry of final orders and judgments approving the proposed settlement agreements is warranted. Finally, the FTC has represented to the Court that should its motion for intervention be granted, any further litigation of the requested fee petition would not delay the disbursement of approximately $19 million of the $24 million

settlement to members of the Direct Purchaser Settlement Class since the disputed fee petition concerns only the remainder of the settlement account—roughly $5.2 million. Plaintiffs do not argue that distributing the funds in a bifurcated fashion would prejudice their clients, and the Court finds that staying the distribution of the $5.2 million is reasonable pending its ruling on the fee petition. Additional payments to class members could always be made at a later date if the Court reduces the requested fee petition. Therefore, the Court finds that the FTC's timely application for intervention for a limited purpose will not unduly delay or prejudice the plaintiffs' case or recovery of damages. The issue remains, however, whether the Court is nonetheless permitted to grant the FTC leave to intervene, consistent with the language and intent of Rule 24(b)(2).

With respect to a governmental application to intervene under Rule 24(b)(2), the D.C. Circuit's decision in *Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir.1967), is instructive. In *Nuesse*, the D.C. Circuit reversed the district court's denial of an application to intervene by the Wisconsin banking commissioner in an action by a Wisconsin bank to enjoin the United States Comptroller of Currency from approving an application by a national bank to open a branch in the vicinity of the state bank's office. *Nuesse*, 385 F.2d at 706. In doing so, the court acknowledged that the second sentence of Rule 24(b)(2) "expands the concept of 'claim or defense' insofar as intervention by a government officer or agency is concerned.'" *Id.* at 705 (citing J. Moore, Federal Practice at ¶ 24.10, at 65 (1966)). "While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation." *Id.* at 706.

In this case, the FTC maintains that it has an official interest in maximizing the actual recovery paid to consumers injured by the

---

7. In the alternative, the FTC asked the Court to allow it to participate as an *amicus curiae* and treat its memorandum in opposition as an amicus brief in considering class counsel's fee petition.

8. The FTC does not assert a conditional right to intervene by statute, and this Court finds there is no basis for granting such intervention pursuant to Rule 24(b)(1).

defendants' misconduct. The FTC asserts that in pursuing this public interest, it must ensure that any attorneys' fee award that will reduce the actual amount recovered by injured consumers is reasonable and not excessive.

Title 15 U.S.C. §§ 18 and 18a provide the FTC with broad authority to prevent and remedy corporate acquisitions that may substantially lessen competition or tend to create a monopoly. *See generally* 15 U.S.C. §§ 18 and 18a. The underlying purpose for this broad grant of authority was to allow the FTC to protect "the public against the evils which were supposed to flow from the undue lessening of competition." *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 50 S.Ct. 89, 74 L.Ed. 431 (1929). For violations of section 18a in particular, the FTC may seek and the court may grant any equitable relief—to include disgorgement—that the court in its discretion determines is necessary. *See* 15 U.S.C. § 18(g); *see also FTC v. Wetherill*, 1993 WL 563621 at *3 (C.D.Cal. May 14, 1993) (finding disgorgement of one's unjust enrichment an appropriate equitable remedy where it serves the public policy of deterring future regulatory violations). In settling its suit with the defendants, the FTC agreed that the $19 million in disgorgement could be subsumed into any private class action settlement as long as the FTC found the distribution plan acceptable and none of the disgorgement funds would be used to pay attorneys' fees. The court finds that by virtue of the FTC's general charter and its settlement agreement with the defendants in particular, the FTC's official interest extends to the instant suit with respect to the effect of the requested fee petition on the actual recovery by class members in this action.[9]

Plaintiffs assert that the *Nuesse* court did not apply Rule 24(b)(2) so broadly as to warrant intervention by the FTC in this instance. In particular, plaintiffs contend that while the intervening state government banking official in *Nuesse* was responsible for enforcing the same banking statutes and regulations "relied on" by the plaintiffs in bringing the suit, the FTC has no official role with respect to the award of a fee petition in this case.

■ The Court finds, however, that plaintiffs' reading of *Nuesse* is too narrow, in that such a reading "reflects an underlying but ... erroneous premise that on a governmental official's application for permissive intervention the only 'interest' is the interest expressly referred to in the wording of Rule 24(b) as amended." *Nuesse*, 385 F.2d at 694. As previously stated, the FTC has an official interest in ensuring that members of the plaintiff class receive the greatest possible approximation to full recovery for their injuries. Indeed, the FTC's interest in class counsel's fee petition arises only by virtue of the fact that whatever fee amount is awarded to counsel will necessarily reduce the amount of the common fund available for distribution to members of the Direct Purchaser Settlement Class.

Because of this governmental interest, the Court also rejects plaintiffs' contention that the FTC lacks standing to intervene for purposes of opposing the fee petition. Plaintiffs essentially assert that the FTC has no more standing to intervene than that of a plaintiff who has opted out of the class. Citing *In re Vitamins Antitrust Litig.*, No. 99–197, 2000 WL 1737867, at *6 (D.D.C. March 31, 2000). Plaintiffs' argument fails, however, to acknowledge the important difference between the personal legal interests that a private litigant may pursue versus those pursued by a governmental official in furtherance of his official responsibilities on behalf of the public interest. Here, the Court has already established that the FTC seeks to intervene in order to serve the public.

9. Plaintiffs also argue that because the FTC's sole basis for intervening is to ensure that the entire $19 million in disgorgement negotiated in the settlement of the Government's suit be distributed to consumers, the $5.115 million fee award requested by class counsel for the Direct Purchaser Settlement Class is not FTC's concern because if awarded, it would not threaten the distribution of the $19 million in disgorgement. The FTC's interest in obtaining the maximum possible recovery for the injured consumers, however, should not be artificially limited to the $19 million in disgorgement it specifically safeguarded from being paid out as attorneys' fees in its negotiated settlement.

It is therefore, this 14th day of February, 2002,

ORDERED, that the motion for final approval of settlement between the Direct Purchaser Settlement Class and defendants and entry of final judgement [28] is granted; and it is

FURTHER ORDERED, that the motion for final approval of settlement between the Indirect Purchaser Settlement Class and defendants and entry of final judgement [31] is granted; and it is

FURTHER ORDERED, that the motion to intervene by the Federal Trade Commission for the limited purpose of opposing the fee petition filed by class counsel for the Direct Purchaser Settlement Class [35] is granted; and it is

FURTHER ORDERED, that this action and all those consolidated by it are dismissed with prejudice.