736 F.2d 1416
 77 A.L.R.Fed. 531, 39 Fed.R.Serv.2d 751
 SANGUINE, LTD., Plaintiff-Appellee,
v.
UNITED STATES DEPARTMENT OF the INTERIOR, Bureau of Indian
Affairs, United States Geological Survey, Stanley
Speaks, and F.L. Stelzer, Defendants- Appellees,
Delra M. Toohey, Mae Lamar Davis, Imogene Birch, Eva Lois
Warden, Richard Guy, Wildena F. Guy Moffer,
Willard B. Guy, Berdena Holder and
Ronnie F. Birch, Sr.,
Movants-In-
Intervention
Appellants.
 No. 82-1030.
 United States Court of Appeals,
Tenth Circuit.
 June 15, 1984.
 
 Patricia L. Brown, Washington, D.C. (John Michael Facciola, of Wilkinson, Cragun & Barker, Washington, D.C., and Jap W. Blankenship of Fellers, Snider, Blankenship, Bailey & Tippins, Oklahoma City, Okl., of counsel, with her on the brief), for movants-in-intervention appellants.
 Kent L. Jones, Tulsa, Okl. (James C.T. Hardwick and Mark K. Blongewicz, Tulsa, Okl., with him on the brief) of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for plaintiff-appellee Sanguine, Ltd.
 Thomas H. Pacheco, Atty., Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., John E. Green, Acting U.S. Atty., Roger Stuart, Asst. U.S. Atty., Oklahoma City, Okl., and Laura Frossard, Atty., Dept. of Justice, Washington, D.C., on the brief), for defendants-appellees.
 Before DOYLE and LOGAN, Circuit Judges, and CHILSON, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 This is an appeal from the district court's denial of a motion for intervention as of right under Fed.R.Civ.P. 24(a)(2) and for permissive intervention under Fed.R.Civ.P. 24(b). Because we hold that appellants were entitled to intervene as of right, we do not discuss the permissive intervention issue.
 
 
 2
 Appellants, nine members of the Wichita and Affiliated Tribes of Oklahoma, own restricted Indian lands in western Oklahoma. Pursuant to its trust responsibilities to Indians, the United States, through the Department of Interior, oversees and must approve all oil and gas leases on restricted Indian lands. 25 U.S.C. Sec. 396a. With the approval of the Bureau of Indian Affairs (BIA), sometime before April 10, 1981, appellants leased their lands to Sanguine, Ltd., an oil and gas exploration company. Each lease grants Sanguine the right to drill for and extract oil and gas from the land for a specified term of years and as long thereafter as oil and gas are produced from the land in paying quantities.
 
 
 3
 The Secretary of Interior may subject leases on Indian lands to "any reasonable cooperative unit or other plan" for oil and gas production. 25 U.S.C. Sec. 396d. Each lease between Sanguine and an appellant provides that the parties will abide by any cooperative or unit agreement that is adopted by a majority of operating interests in the unit and approved by the Secretary. The unit development plan most common for restricted Indian lands in western Oklahoma is a "communitization" agreement. This type of agreement pools or communitizes all oil and gas production from leases within an area established by the Oklahoma Corporation Commission as a drilling and spacing unit for one well. The agreement provides that production anywhere within the unit is deemed produced from each lease within the unit. Thus, production anywhere within the unit will extend the duration of any lease within the unit beyond its primary term.
 
 
 4
 This appeal arises from a suit that Sanguine filed against the Department of Interior and some of its subsidiary agencies and officials (hereafter the "government"). Sanguine alleged that before April 10, 1981, the BIA routinely approved a form of communitization agreement (the "Standard Form" agreement) under which production of oil and gas in paying quantities from any zone within the unit is deemed produced from every zone on every lease within the unit. On April 10, 1981, however, Stanley Speaks, Anadarko Area Director of the BIA, announced that the BIA would only approve communitization agreements submitted on the "Rev. April 1981 Form." That form provides, "All Trust or Restricted Leases committed by this agreement are hereby amended to provide that any non-producing zones shall be released at the end of the primary term of said lease." Sanguine had not yet entered into communitization agreements for its leases with appellants when Speaks made this announcement. Thus, Sanguine filed suit, seeking a declaration that Speaks' ruling requiring use of the Rev. April 1981 Form was unlawful and an injunction against enforcement of Speaks' ruling.
 
 
 5
 After a hearing on Sanguine's motion for a preliminary injunction, the district court issued an order on July 20, 1981, declaring that Speaks' ruling was unlawful because (1) it was adopted in violation of public notice and comment procedures required for rulemaking; (2) it constituted an improper retroactive modification of Sanguine's leases; and (3) Speaks acted beyond the scope of his delegated authority in adopting the rule. The court enjoined the government defendants from requiring Sanguine to use the Rev. April 1981 Form and ordered them to approve communitization agreements that Sanguine submitted on the Standard Form. On August 11, 1981, the parties reached a settlement agreement. The parties stipulated both to the facts set forth in Sanguine's complaint and the invalidity of Speaks' ruling. The parties also submitted a consent decree, which the district court entered as its final order on that date. The order permanently enjoined the government from requiring Sanguine to use the Rev. April 1981 Form, declared that Speaks' ruling was unlawful, and ordered the government to approve communitization agreements that Sanguine submitted on the Standard Form pending the lawful adoption of a different form of communitization agreement.
 
 
 6
 On September 14, 1981, appellants filed a motion to intervene in the action between Sanguine and the government, which the district court denied. Fed.R.Civ.P. 24(a)(2) provides,
 
 
 7
 "Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
 
 
 8
 The district court found that appellants' motion to intervene was timely. Nonetheless, it denied the motion to intervene as of right because it found that the government adequately represented appellants' interests. The Indian lessors appealed and appellees Sanguine and the government both support the trial court's ruling.
 
 
 9
 * Appellees contend that the district court erred in finding that appellants' motion for intervention was timely. The trial court must determine timeliness in light of all of the circumstances, NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973), including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances. United Nuclear Corp. v. Cannon, 696 F.2d 141, 143 (1st Cir.1982); Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir.1977). The trial court's determination is subject to review only for abuse of discretion. NAACP v. New York, 413 U.S. at 366, 93 S.Ct. at 2603; Lumbermens Mutual Casualty Co. v. Rhodes, 403 F.2d 2, 5 (10th Cir.1968), cert. denied, 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567 (1969).
 
 
 10
 Appellants did not move to intervene in the instant case until more than thirty days after entry of judgment. Courts are normally reluctant to grant a motion to intervene at a late stage in the proceedings or after entry of judgment. See, e.g., Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.) (per curiam), cert. denied, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). Furthermore, in reliance on the consent decree, Sanguine entered into communitization agreements and began drilling on appellants' lands before appellants moved to intervene. Thus, Sanguine may suffer prejudice if we grant appellants' motion. On the other hand, as we discuss below, appellants will suffer prejudice if we do not allow them to intervene. Moreover, appellants submitted an affidavit from Newton Lamar, President of the Wichita and Affiliated Tribes, Appellants' Reply Brief, Ex. A, indicating that appellants were not aware of their interest until approximately two weeks after entry of judgment. The affidavit also asserts that appellants did not learn of their interest until that late date because the BIA did not release the names of the affected lessors until August 20, 1981, over a month after Lamar had requested that information. Under these circumstances, we cannot conclude that the trial court abused its discretion in finding that appellants' motion to intervene was timely.
 
 II
 
 11
 * Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the "minimal" one of showing that representation "may" be inadequate. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); National Farm Lines v. ICC, 564 F.2d 381, 383 (10th Cir.1977). An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest. See generally 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1909 at 523-32 (1972).
 
 
 12
 Appellants in the instant case primarily contend that the government did not adequately represent appellants' interests because the government did not vigorously oppose Sanguine's claims. Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case. United States v. Board of School Commissioners, 466 F.2d 573, 575 (7th Cir.1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). Nor is representation inadequate merely because the representative enters into a consent decree, because "any case, even the most vigorously defended, may culminate in a consent decree." Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Here, however, the government in effect conceded the case at the outset. The government did not file a responsive pleading or brief; at the hearing it called no witnesses and made no significant arguments against Sanguine's motion. Instead, government counsel essentially agreed that Speaks' actions were unlawful. In the consent decree, which was entered only thirty-three days after Sanguine filed suit, the government stipulated to all of the facts and to the legal conclusions stated in Sanguine's motion for an injunction. We question neither the good faith nor the competency of the government or its counsel. However, under these circumstances we conclude that appellants have sustained their minimal burden of showing that the government's representation of appellants' interests may have been inadequate.
 
 B
 
 13
 We next consider whether appellants possess "an interest relating to the property or transaction which is the subject of the action" within the meaning of Rule 24(a)(2). As we recently noted in Rosebud Coal Sales Co. v. Andrus, 644 F.2d 849, 850 (10th Cir.1981) (per curiam), courts have enjoyed little success in attempting to define precisely the type of interest necessary for intervention. See generally 3B J. Moore & J. Kennedy, Moore's Federal Practice Sec. 24.07 (2d ed. 1982). Thus, we determine whether an applicant's interest is sufficient by applying the policies underlying the "interest" requirement to the particular facts of the case. Rosebud Coal Sales Co. v. Andrus, 644 F.2d at 850; see Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967) ("the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.").
 
 
 14
 In contending that appellants lack a sufficient interest in the suit between Sanguine and the government, appellees emphasize that the leases at issue do not grant appellants a voice in accepting or rejecting a communitization agreement. Thus, appellees argue, appellants' interest in the suit is too remote to justify intervention. We disagree. First, we note that the consent decree may have the effect of modifying the rights of some appellants in outstanding leases. See Appellants' Reply Brief, Ex. B. Also, Speaks' ruling, if applied, would provide a direct economic benefit to appellants, since they could re-lease the nonproducing zones on their lands when the primary terms of their leases expire. Further, appellants' economic stake in the challenged ruling is not fortuitous; it exists precisely because the government has a duty to protect the economic interests of lessors of restricted Indian lands. Compare Rosebud Coal, 644 F.2d at 851, with County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980). We have held that applicants in situations similar to appellants' possess a sufficient interest to intervene in suits challenging agency actions. See Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d 1341 (10th Cir.1978); National Farm Lines v. ICC, 564 F.2d at 381.
 
 C
 
 15
 Given appellants' interest in enforcing the challenged ruling, it is clear that they are so situated that the consent decree "may as a practical matter impair or impede" their ability to protect that interest. The consent decree enjoins the government from requiring Sanguine to use the Rev. April 1981 Form, and we perceive no means by which appellants could compel the government to violate the decree. Moreover, even if appellants may challenge the government's approval of Standard Form communitization agreements in a separate action, cf. Kenai Oil & Gas, Inc. v. Department of Interior, 671 F.2d 383 (10th Cir.1982) (in action by lessee against Superintendent of the BIA court held that Superintendent's refusal to approve communitization agreement is reversible if arbitrary, capricious, an abuse of discretion, or contrary to law), judicial review of agency action may as a practical matter afford the applicant much less protection than the opportunity to participate in proceedings to uphold agency actions in the first place. Natural Resources Defense Council v. Costle, 561 F.2d 904, 909 (D.C.Cir.1977); see Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d at 1345; see also Nuesse v. Camp, 385 F.2d at 702 (opportunity to raise same issue in another forum is not bar to intervention as of right).
 
 
 
 We reverse the order of the district court denying appellants' motion under Fed.R.Civ.P. 24(a)(2) and remand the case with the direction that it permit appellants to intervene.
 
 
 *
 The Honorable Hatfield Chilson, Senior United States District Judge for the District of Colorado, sitting by designation